[No. 2049–3.   Division Three.   February 27, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD WRIGHT, JR., *Appellant.*

382

*Allen Ressler* and *Richard Emery,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Fred Caruso, Deputy,* for respondent.

McINTURFF, J.—More than 7 years ago appellant Richard Wright was arrested for second–degree assault and robbery. He entered a guilty plea on December 9, 1970, and on April 28, 1971, he was sentenced to 5 years of probation conditioned upon continuing psychiatric treatment at Eastern State Hospital. His probation was revoked in July 1973, and he was sentenced to a maximum 10 years of confinement. Apparently he is currently on parole.

Since his arrest, Mr. Wright's case has repeatedly been before the courts. In June of 1974 he sought from this court post–conviction relief on the grounds the trial judge failed to determine or order a hearing as to whether he was competent to plead guilty, failed to determine whether he was

competent to stand trial and convicted him while he was legally insane. His application for such relief was denied.

After review in *Wright v. Morris,* 85 Wn.2d 899, 540 P.2d 893 (1975), the Supreme Court remanded Mr. Wright's petition to this court. We, in turn, remanded the case to Spokane County Superior Court for "disposition it deems appropriate pursuant to CrR 7.7."[1] Pursuant to the remand, a fact–finding hearing was conducted on May 5, 1976, after which the court denied Mr. Wright's petition.

At the 1976 hearing the court heard testimony from a state hospital psychiatrist who dealt with Mr. Wright at the time of his initial court appearances, Superior Court Judge William H. Williams who accepted his guilty plea and sentenced him, and Mr. Sid Wurzburg, counsel for Mr. Wright at arraignment and sentencing. The court concluded[2] that the facts known to Judge Williams at both the time of the plea and sentencing were not such as to raise a reasonable doubt as to Mr. Wright's competency and "that Judge Williams acted entirely properly in proceeding as he did." Mr. Wright's request that the sentence be vacated was therefore denied. He appeals.

The court considered the sole question presented at the hearing to be whether under the facts known to Judge Williams at the time of the sentencing he should have ordered a sanity commission to determine whether Mr. Wright was competent to have entered his plea of guilty on December 9, 1970.[3] As found by the court, those facts are

_____

[1]Order of remand was dated February 24, 1976. We note that CrR 7.7 regarding post–conviction relief was rescinded July 1, 1976, except as to cases pending on that date. The procedures have been superseded by the rules pertaining to personal restraint petitions. RAP 16.3(b).

[2]The parties have stipulated that the memorandum opinion of the court be considered as findings of fact and conclusions of law. No error is assigned to the findings, and they are treated as verities.

[3]The trial court specifically refused to consider the question of Mr. Wright's competency at the time he entered his guilty plea or at the time of sentencing. The court said:

> Well, I might state right now that I am not going to declare that a competency hearing be had in this case, no matter what my ruling would be. As far

that after Mr. Wright had entered his plea, and following a few remarks by the deputy prosecutor, Mr. Wright cried long enough for the court to call a brief recess. When court resumed, a presentence investigation was ordered, and Mr. Wright was sent to jail pending completion of the investigation.

On the same day Mr. Wright wrote to Judge Williams indicating sorrow for the way he had acted in court and for what he had done to the victim of the assault. He also asked that Judge Williams allow him to be released during the Christmas holidays so that he could see his daughter. A series of letters from Mr. Wright to Judge Williams followed, one of them referring to Mr. Wright's desire to sing and play the piano in jail and indicating that an unknown someone who lived at an unknown address in Spokane had told Mr. Wright she would teach him to play the piano.

In December 1970, Judge Williams allowed Mr. Wright a holiday release from jail, but he was immediately involved in a hit–and–run accident, while driving under the influence of liquor, and was arrested and returned to jail within a day. When arrested, he had a blank starter pistol in his possession. Then, on January 22, 1971, apparently prompted by the letter concerning piano lessons and at the request of Mr. Wurzburg, Judge Williams committed Mr. Wright to Eastern State Hospital for a period not to exceed 30 days for the purpose of observation to determine his mental capacity.

By letter of February 19, 1971, Dr. Jack Ashurst, an Eastern State psychiatrist, reported to Judge Williams that Mr. Wright's condition was "one of borderline mental

---

as the second thrust of your argument is concerned, I feel that *Pate* [*Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966)] and *Drope* [*Drope v. Missouri*, 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975)] are in point; that the time lapse here is so great that it would be futile to try and reexamine, in effect, back in 1970 what this man's mental condition was.

DEFENSE COUNSEL: That's your finding of fact in that regard, I take it?

THE COURT: Yes.

retardation," and he recommended Mr. Wright be returned to the court for disposition. Attached to the letter was a clinical summary which indicated Mr. Wright was "not psychotic" and that there was no evidence he suffered from character disorder. The report said, "The difficulty seems to be in his intelligence level."[4]

The summary also stated, "He is correctly oriented in all spheres. There is no demonstrable defect in memory, recent or remote. Personal judgment was defective. Ability to deal with abstract concepts also nonexistent." It concluded:

> It is quite difficult to determine whether or not he really understands the meaning of right or wrong and whether or not he really appreciates the seriousness of his offense. Due to this man's rather wholesome attitude about his past and toward people here in the hospital, I feel that he might benefit from a period of training in a rather rigidly structured environment.

Mr. Wright was then returned to Spokane County Jail. However, 2 weeks later he was civilly committed to the state hospital as a mentally ill person and began receiving treatment. On April 28, 1971, Mr. Wright was returned to court for sentencing at which time the deputy prosecutor informed the court generally of the civil commitment and that it was a result of Mr. Wright's difficulties in the jail. At that time the court was informed that Mr. Wright was currently under psychiatric care at the hospital and would continue under such care until his difficulties were resolved.

Before imposing sentence, Judge Williams asked Mr. Wright if he had anything to say in his own behalf, to which he replied, "Yes, Thou shall not kill." Upon the recommendation of both the deputy prosecutor and defense counsel, Mr. Wright was sentenced to probation for a period of 5 years conditioned upon continuing treatment at

---

[4]For an exhaustively researched and well written opinion by Chief Judge Bazelon concerning the special problems of defendants with low IQ scores and on the borderline of mental retardation, see *United States v. Masthers*, 539 F.2d 721 (D.C. Cir. 1976).

the hospital "until determined to be recovered from his mental illness."

Not known to Judge Williams at that time was that while he was in jail awaiting sentencing, Mr. Wright's mental condition deteriorated rapidly. He experienced a severe psychotic episode during which he was hyperactive, yelling, screaming, combative and possibly hallucinating. He smeared feces over the walls and himself, and he was involuntarily civilly committed to the state hospital. Hospital records indicate a diagnosis of schizophrenia about 13 days prior to the sentencing. In addition, Dr. Ashurst testified during the fact-finding hearing on remand that Mr. Wright was not competent to stand trial at the time of either of his commitments or at the time of sentencing based on criteria that he know and appreciate his peril and the consequences of his being found guilty as well as having the ability to participate in his own defense.[5]

Mr. Wright raises three arguments on appeal: (1) The trial court erred in finding that, based on the facts before him, Judge Williams did not err in failing to order a hearing into Mr. Wright's competency to stand trial or be sentenced; (2) the trial court erred in failing to find the evidence not before Judge Williams was sufficient to require a hearing as to Mr. Wright's competency at

---

[5]As indicated earlier, the trial court did not determine the competency of Mr. Wright at either arraignment or sentencing. It found only that Dr. Ashurst had testified that Mr. Wright was not competent at either time he was committed to the state hospital and at sentencing.

Indeed, the psychiatrist's testimony during the CrR 7.7 hearing vacillated. At one point he was asked if Mr. Wright "met the criteria of knowing right from wrong, understanding the proceedings against him and being capable of assisting in his own defense." He answered, "Yes, sir, I'm quite sure he did; however, minimal." On cross-examination, however, after being asked virtually the same question, he replied, "He was not competent." A short time later he answered:

Well, I hate the expression [competence], but marginally so. He could tell right from wrong, but I don't think his emotional status rendered him capable of adhering to the right. His ability—his thinking was not quite concise; judgment was poor—poorer than usual that you find most of the time; and altogether, I would say he was on the borderline between competency and incompetency. This gentleman can become sick so suddenly, and then well so suddenly.

arraignment and sentencing; and (3) the trial court erred in failing to determine Mr. Wright's competency at those times.

■ Fortunately, in some respects the law regarding the rights of an incompetent defendant is settled. There is no doubt that a defendant's right to due process is violated if he is convicted[6] or sentenced[7] while he is incompetent. Where there is a substantial question of possible doubt as to the defendant's competency to stand trial, due process requires that the trial court conduct a competency hearing.[8] That decision is a matter within the discretion of the trial court, and it will not be overturned absent an abuse of that discretion.[9]

■ To consider only the facts before Judge Williams at the time of arraignment and sentencing as bearing on the question of whether a hearing should have been held on Mr. Wright's competency answers only one–half of the question. Mr. Wright may well have been incompetent in

[6]*Drope v. Missouri,* 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975); *Pate v. Robinson* 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966); *State v. Johnston,* 84 Wn.2d 572, 527 P.2d 1310 (1974).

[7]*State v. Henke,* 196 Wash. 185, 193, 82 P.2d 544 (1938); *State v. Schafer,* 156 Wash. 240, 251–52, 286 P. 833 (1930); *State v. Peterson,* 90 Wash. 479, 482, 156 P. 542 (1916); *State ex rel. Mackintosh v. Superior Court,* 45 Wash. 248, 251–52, 88 P. 207 (1907). RCW 10.77.050.
Our courts have said little about the reason for requiring competency of a defendant at the time of sentencing. Rather, they have considered the rule an elementary principle adopted from the common law. In *Mackintosh,* the court went the furthest in explaining the competency requirement. Quoting from Blackstone's *Commentaries,* the court said at page 254:
"If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of nonsane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution."

[8]*State v. Johnston,* 84 Wn.2d 572, 527 P.2d 1310 (1974); *State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968).

[9]*State v. Johnston,* 84 Wn.2d 572, 527 P.2d 1310 (1974); *State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968).

spite of the lack of evidence before the trial court. If due process prevents the conviction of an incompetent, an inquiry limited only to the facts appearing before the trial judge does not serve due process. For whatever reasons, the judge may not be aware of an accused's mental state. Denying the accused his fundamental rights solely because the trial court did not have facts before it sufficient to create a doubt about competency is nonetheless a denial of due process which may be remedied upon a petition for post–conviction relief.

This result is in accord with the scope of relief available in post–conviction proceedings either under the former CrR 7.7[10] or the new rule, RAP 16.4.[11] Other considerations[12] also favor such a decision. Furthermore, it is supported by

---

[10]CrR 7.7(g) allowed the court hearing the matter to order appropriate relief if it found:

"(1) that the conviction was obtained or sentence or order imposed in violation of the Constitution of the United States or the constitution or laws of the State of Washington; or

". . .

"(3) that material facts exist not theretofore presented and heard, which require vacation of the conviction, sentence or other order in the interest of justice; . . ."

[11]RAP 16.4(c)(2) and (3) provide similar relief.

[12]American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Post–Conviction Remedies* (Approved Draft, 1968), states at pages 33–34:

"The inclusion in a post–conviction system of a remedy analogous to the motion for new trial on newly discovered evidence is a departure from the ordinary structure of existing post–conviction remedies, but there exists a close relationship between the factual issues that such motions raise and the other grounds for post–conviction relief. . . . Separation of the two inquiries could easily produce difficult questions of the proper remedy in certain cases.

"No matter how specifically the grounds for post–conviction relief are stated, it is necessary that the contours of the form of relief be broad enough to include any new substantive grounds that may develop. During the past few years there has been frequent change in the number and types of claims recognized as proper for post–conviction review. With the subject generally in a fluid state, it seems appropriate to permit the courts to determine, on a case–by–case basis, whether and when new claims shall be allowed. The essential problem is the degree of finality to be accorded to criminal judgments, a vexing problem of many strands."

case law. As the Supreme Court of Indiana said in *Evans v. State,* 300 N.E.2d 882, 888 (Ind. 1973):

> When we have a situation such as this where the trial process has been completed without any apparent indications of incompetency on the part of appellant the verdict of a court should not be lightly disturbed. The relevant issue is, after all, appellant's ability to understand the proceedings and consult with his attorney and if any doubt concerning his ability to do so are to become apparent they would normally do so when he is in the process of performing these functions. However as we have held in a recent opinion:
>
> > "On the other hand we do not believe that the issue of competency should always be irrevocably dissolved simply because nothing during the time frame [pretrial to sentencing] . . . gave rise to doubts about an appellant's competency, regardless of the significance of the post trial disclosures and their relevance to possible incompetency at the time of trial. In certain unique situations facts coming to light only after the trial may be so significant and compelling as to create 'reasonable grounds' to question a defendant's competency at the time of his trial and therefore require a hearing on the question." *Tinsley v. State,* [298 N.E.2d 429 (Ind. 1973)].
>
> The essential question in this case therefore is whether the psychiatric information which became available only after the trial is "so significant and compelling" as to give rise to the necessity for a hearing on the matter.[13]

---

[13]*See also Fontaine v. United States,* 411 U.S. 213, 36 L. Ed. 2d 169, 93 S. Ct. 1461 (1973); *United States v. Masthers,* 539 F.2d 721 (D.C. Cir. 1976); *Rose v. United States,* 513 F.2d 1251 (8th Cir. 1975); *State v. Boge,* 252 N.W.2d 411 (Iowa 1977); *State v. Messier,* 114 Ariz. 522, 562 P.2d 402 (1977); *People v. Walton,* 15 Ill. App. 3d 896, 305 N.E.2d 395 (1973). *But see Martin v. Morris,* No. 75–1336 (9th Cir. memorandum opinion September 16, 1976).

In *Martin* the court said: "Later discovered evidence, no matter how probative of the defendant's competency, cannot be used to show that the trial court should or need not have held a *Pate* hearing. *Drope v. Missouri, supra,* 420 U.S. at 181–82 n.17." We think the court misconstrued the impact of the *Drope* footnote. While it does say the testimony of psychiatrists at a post–conviction hearing was not relevant "to the question before us," it cannot be read as foreclosing the consideration of later discovered evidence. In phrasing the question presented in *Drope,* the court said:

> In the present case there is no dispute as to the evidence possibly relevant to petitioner's mental condition that was before the trial court prior to trial

Given that evidence not appearing before the trial court may be considered in a petition for post–conviction relief, we believe that evidence, on its own, or considered in conjunction with what was known to Judge Williams, dictates a competency hearing be held. However, such an inquiry should be directed only to Mr. Wright's competency at the time of sentencing because, other than the crying outburst at arraignment, there is nothing in either the record at trial or the report of the CrR 7.7 proceeding to question his competency at the time he entered his plea.

■ The more difficult question presented by Mr. Wright is the effect of the inordinate delay occasioned by the appellate procedures. Since more than 7 years have passed from the time of his arrest and arraignment, the efficacy of a competency hearing at this time might well be questioned. Indeed, the problem has been addressed in several cases[14] where the courts have decided a belated determination of the defendant's sanity at the time he pleaded would be fruitless. As the court said in *Drope v. Missouri,* 420 U.S. 162, 183, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975):

> The question remains whether petitioner's due process rights would be adequately protected by remanding the case now [1975] for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, . . . we cannot conclude that such a procedure would be adequate here. The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried.

Because of the lengthy delay in arriving at the question of whether Mr. Wright was entitled to a hearing on his

and thereafter. Rather, the dispute concerns the inferences that were to be drawn from the undisputed evidence and whether, in light of what was then known, the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial.

[14]*Drope v. Missouri,* 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975); *Pate v. Robinson,* 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966); *Evans v. State,* 300 N.E.2d 882 (Ind. 1973).

competency to be sentenced, we, too, are concerned about the adequacy of such a determination at this time. However, we are persuaded by the reasoning of *Evans v. State, supra* at 888 n.1:

Appellant has cited to us a portion of the Federal Supreme Court's decision in *Pate v. Robinson* (1966), 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 in which the majority mandates a new trial rather than a hearing on appellant's competency at the time of the trial because of the six year time differential between the time of trial and the time when a hearing would be held. The court apparently feared that the time span would make the task of determining appellant's competency at trial difficult. In our case, however, unlike *Pate,* there exists a substantial body of psychiatric information compiled shortly after his trial which would be relevant to a determination of competency at the time of trial.

Here, as in *Evans,* there is a substantial body of psychiatric data obtained at the time Mr. Wright was sentenced. Therefore, we remand for a hearing to determine whether Mr. Wright was competent at the time of sentencing. In the event the court finds he was incompetent at the time of sentencing, his present state of competency should be determined. If he is found to be presently competent, then a resentencing should occur. If he was not competent at the time of sentencing and is not now competent, the sentence should be vacated and proper disposition should be made by the trial court, including proceedings, pursuant to RCW 10.77, for the criminally insane.

MUNSON, C.J., and GREEN, J., concur.