[No. 14438-3-I. Division One. August 5, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. MARLEN B. HICKS, *Appellant*.

*Wesley G. Hohlbein* and *Stanley G. Bakun,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Timothy X. Sullivan, Deputy,* for respondent.

SWANSON, J.—Marlen B. Hicks appeals his jury conviction of two counts of first degree murder while armed with a deadly weapon and a firearm. He alleges a number of trial court errors. We affirm.

At about midnight on March 5, 1983, Dean Hicks, age 22, and his sister, Pamela, age 28, became embroiled in a verbal and physical confrontation over late telephone calls from Dean's girl friend. Lona Hicks, their mother, tried to

stop the fight; Marlen Hicks, their father, looked on. To defend herself, Pamela jabbed at Dean with an umbrella. When Dean grabbed the umbrella away and hit Pamela with it in the lower left back, she fell to the floor. As she stood up, she saw Dean fall back as he was shot. Assuming that her father had shot Dean and fearing for her safety, Pamela ran out of the house. As she did so, she heard a second shot.

Pamela's sister, Paula, who had heard two shots, was warned by her blood–covered mother that she should leave the house with her 3–year–old son. After leaving the property, Paula heard a third shot.

After the police surrounded the house and used tear gas, Hicks was found in the attic with a high–powered rifle and was arrested. Dean had been killed with a single shot to the head. Mrs. Hicks' body was found outside with a wound to the chest and arm and a second fatal contact wound to the head.

On March 9, 1983, Hicks was charged with two counts of first degree murder while armed with a deadly weapon and a firearm. On March 11, 1983, he was admitted into Western State Hospital's mentally ill offenders' program for treatment, and on April 28, 1983, the hospital staff reported that he was competent to stand trial. On June 2, 1983, Hicks was sent back to Western State Hospital for further evaluation and treatment, and a June 15, 1983 staff report reiterated the opinion that he was competent to stand trial. At an evidentiary hearing on August 8, 1983, the trial court found Hicks competent to stand trial.

After a jury trial commencing on November 14, 1983, Hicks was found guilty as charged and was sentenced to two concurrent life terms. A motion for a new trial was denied.

The first issue is whether the trial court abused its discretion in determining that Hicks was competent to stand trial. An incompetent person may not be tried, convicted, or sentenced for the commission of an offense so long as the incapacity continues. RCW 10.77.050; *State v. Wicklund,*

96 Wn.2d 798, 800, 638 P.2d 1241 (1982). The conviction of an accused while he is legally incompetent violates his right to a fair trial. *Drope v. Missouri,* 420 U.S. 162, 172, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975); *State v. Wicklund, supra.*

■ The test for competency to stand trial is (1) whether the accused is capable of properly understanding the nature of the proceedings against him and (2) whether he is capable of rationally assisting his legal counsel in the defense of his cause. RCW 10.77.010(6);[1] *State v. Wicklund, supra.* The trial court's determination that an accused is competent to stand trial will not be reversed absent a manifest abuse of discretion. *State v. Crenshaw,* 27 Wn. App. 326, 330, 617 P.2d 1041 (1980), *aff'd,* 98 Wn.2d 789, 659 P.2d 488 (1983). Deference is given to the trial court's competency determination because of the court's opportunity to observe the individual's behavior and demeanor. *Crenshaw.*

The Washington Supreme Court has stated:

> The trial judge may make his [competency] determination from many things, including the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.

*State v. Johnston,* 84 Wn.2d 572, 576, 527 P.2d 1310 (1974) (quoting *State v. Dodd,* 70 Wn.2d 513, 514, 424 P.2d 302, *cert. denied,* 387 U.S. 948 (1967)).

Here the trial court reached its pretrial decision of Hicks' competency to stand trial after taking into account relevant factors including his appearance, demeanor, and conduct, medical and psychiatric reports and counsel's statements. After observing Hicks during the competency hearing, the trial judge stated that Hicks "gave [him] every appearance of paying particular attention to things."

---

[1]RCW 10.77.010(6) provides:

"(6) 'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or to assist in his own defense as a result of mental disease or defect."

RCW 10.77 relates to procedures regarding the criminally insane and those defendants incompetent to stand trial. *State v. Wicklund,* 96 Wn.2d 798, 801, 638 P.2d 1241 (1982).

Hicks contends, however, that the trial court abused its discretion by placing greater weight upon a psychologist's testimony than upon an attorney's testimony. This contention lacks merit.

■ A lawyer's opinion as to his client's competency and ability to assist in his own defense is a factor to which the trial court must give considerable weight in determining a defendant's competency to stand trial. *State v. Israel,* 19 Wn. App. 773, 779, 577 P.2d 631 (1978), *cited in State v. Crenshaw, supra* at 331. However, the lawyer whose opinion as to a defendant's competency to stand trial is to be accorded substantial weight is the defendant's own counsel as "one who has the closest contact with the defendant." *State v. Israel, supra.*

Here the testimony that Hicks was not competent to assist counsel in his own defense came not from Hicks' trial counsel but from attorney James McLees, an attorney in defense counsel's office who assisted defense counsel "selectively"; moreover, McLees had no psychological training and had met with Hicks for a total of 45 minutes the night before the hearing. In contrast, Dr. Richard Peterson, who testified to Hicks' competency to stand trial, was a licensed Washington psychologist and a staff psychologist in Western State Hospital's mentally ill offenders' program. Dr. Peterson's opinion was based upon six approximately 1–hour evaluative sessions, including one on the competency hearing date.

Dr. Peterson's testimony was that Hicks understood that his violent acts had legal consequences so that he would be brought to trial and if found guilty, would be sent to jail. Further, Hicks understood the nature of the judge's, prosecutor's, and jury's duties in the court proceeding. Hicks was capable of assisting counsel in his defense in that he acknowledged the need to aid his attorney in preparing a defense and he could recall the events of the night of the shootings, could describe his emotional state, and could identify a number of factors leading up to his actions that night. The trial court, in rendering its competency decision,

noted Mr. McLees' lack of psychological training, in contrast to that of Dr. Peterson, with whose testimony the court was "very impressed."

Moreover, the primary test in reviewing a trial court's competency determination is whether the trial court manifestly abused its discretion. *State v. Crenshaw, supra* at 331. Here a review of the record supports the conclusion that the trial court acted within its discretion in finding Hicks competent to stand trial.

Hicks further contends that the trial court erred in denying his counsel's trial requests for another competency hearing because a reasonable doubt existed as to his competency to stand trial during the entirety of the trial.

RCW 10.77.060(1) provides in part:

> (1) Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.

RCW 10.77.090(1) states in part:

> (1) If at any time during the pendency of an action and prior to judgment, the court finds following a report as provided in RCW 10.77.060, as now or hereafter amended, that the defendant is incompetent, the court shall order the proceedings against him be stayed . . .

■ Where a substantial question of possible doubt exists as to the defendant's competency to stand trial, due process requires that the trial court conduct a competency hearing. *State v. Johnston, supra* at 576; *State v. Wright,* 19 Wn. App. 381, 387, 575 P.2d 740 (1978). The decision to hold a competency hearing is within the trial court's discretion and will not be overturned absent an abuse of discretion. *State v. Johnston, supra, cited in State v. Higa,* 38 Wn. App. 522, 524, 685 P.2d 1117 (1984); *State v. Wright, supra.*

Here the trial court at a hearing on August 8, 1983, found

Hicks competent to stand trial. On the morning of November 21, 1983, when trial testimony began, defense counsel requested a competency hearing after a conversation with Hicks.

The trial court proceeded to question Hicks at length to determine whether a competency question existed. The exchange between the trial court and Hicks revealed that Hicks understood the nature of the offenses for which he was being tried in court, the prosecutor's duty, and the fact of his being represented by attorneys with whom he had a right to discuss the trial proceedings. Based upon Hicks' answers to the trial court's questions, the court concluded that he was competent to stand trial in that he understood the nature of the charges against him and was able to assist his counsel.

Defense counsel maintained that it was "absolutely impossible to work with [Hicks]." The record reveals some tension between Hicks and his counsel. However, as defense counsel himself acknowledged, "My client is mad at me and [that] has nothing to do with competence." The extended colloquy between the trial court and Hicks revealed that although Hicks may have been angry with and thus not fully cooperative with his counsel, he was not incompetent to stand trial.

On November 30, defense counsel again raised the competency question after Hicks allegedly suffered a seizure in the jury's presence so that, according to defense counsel, he was not able to communicate with him. Noting that Hicks had been talking to the jail guard a minute before, however, the trial court reserved judgment as to the significance of what had happened. The court then stated that Hicks appeared to be in the same condition in which he had been prior to whatever had happened and was competent to continue.

Deference is given to the trial court's competency determination because of its personal observation of the defendant's behavior and demeanor that is claimed to have demonstrated incompetency. *State v. Crenshaw, supra* at

330; *State v. Hanson,* 20 Wn. App. 579, 582, 581 P.2d 589 (1978), *review denied,* 91 Wn.2d 1018 (1979). Here a review of the record does not reveal a substantial question of possible doubt as to the defendant's competency to continue with the trial; thus, the trial court's denial of the defense requests for a competency hearing was not an abuse of discretion.

The next issue relates to the RCW 10.77.040[2] requirement that the court instruct the jury to return a special verdict regarding the insanity defense whenever the insanity issue is submitted to the jury. In accordance with this requirement, the jury was instructed to answer the interrogatories on the special verdict form if they found Hicks not guilty by reason of insanity.

Hicks contends that submitting the special verdict form to the jury without additional information or guidelines violated his due process rights by placing before the jury the possibility that the defendant, if found not guilty by reason of insanity, could be released or placed in treatment less restrictive than mental hospital detention. This contention lacks merit.

---

[2]RCW 10.77.040 provides:

"Instructions to jury on special verdict. Whenever the issue of insanity is submitted to the jury, the court shall instruct the jury to return a special verdict in substantially the following form:

|  | answer yes or no |
|---|---|
| "1. Did the defendant commit the act charged? | _____ |
| "2. If your answer to number 1 is yes, do you acquit him because of insanity existing at the time of the act charged? | _____ |
| "3. If your answer to number 2 is yes, is the defendant a substantial danger to other persons unless kept under further control by the court or other persons or institutions? | _____ |
| "4. If your answer to number 2 is yes, does the defendant present a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions? | _____ |
| "5. If your answers [sic] to either number 3 or number 4 is yes, is it in the best interests of the defendant and others that the defendant be placed in treatment that is less restrictive than detention in a state mental hospital? | _____ " |

■ First, rather than suggesting that a defendant found not guilty because of insanity could be released or placed in nondetention treatment, the interrogatories on the special verdict form clearly, by their nature and sequence, solicit the jury's findings as to the disposition of the defendant should the jury find him to be not guilty because of insanity. In construing RCW 10.77.040, we stated:

The list of questions in RCW 10.77.040 is clearly aimed at determining the basis for an acquittal and what should be done if the defendant is acquitted on the basis of insanity.

*State v. Corwin,* 32 Wn. App. 493, 496, 649 P.2d 119, *review denied,* 98 Wn.2d 1004 (1982).

Further, our Supreme Court has stated that the statute provides guidelines that inure to the defendant's benefit:

The trier of the fact must find that the defendant presents a *substantial* danger to other persons or that he presents a *substantial* likelihood of committing other felonious acts. Further, it is not just any felonious acts which must be likely, but only those which jeopardize public safety or security. RCW 10.77.040(3), (4); 10.77-.110.

*State v. Wilcox,* 92 Wn.2d 610, 613, 600 P.2d 561 (1979). In addition, the State must prove by a preponderance of the evidence the defendant's danger to others and the likelihood of his committing felonies endangering the public safety before he can be committed to a state mental hospital. *Wilcox,* at 613–14. The *Wilcox* court, at page 611, stated that "[t]aken as a whole, RCW 10.77 is replete with due process concepts."

Moreover, in addressing the question as to whether the trial court erred in failing to instruct the jury on the consequences of finding the defendant not guilty by reason of insanity,[3] our Supreme Court stated:

---

[3]The proposed instruction would have informed the jury that the defendant would be hospitalized at one of the state's facilities for the criminally insane until the court determined that he should be released. *State v. McDonald,* 89 Wn.2d 256, 270, 571 P.2d 930 (1977).

We find no error in refusing the proposed instruction. . . . The majority of states neither requires nor suggests that the jury be told the consequences of their findings regarding insanity.

(Citations omitted.) *State v. McDonald,* 89 Wn.2d 256, 270, 571 P.2d 930 (1977); *accord, State v. Stoudamire,* 30 Wn. App. 41, 45–46, 631 P.2d 1028, *review denied,* 96 Wn.2d 1011 (1981). *State v. McDonald* is controlling. Submitting to the jury the special verdict form without supplemental explanatory information or guidelines was not an error violative of the defendant's right to a fair trial.

The next issue is whether jury misconduct was grounds for a new trial. Here the alternate juror's affidavit in support of the new trial motion stated that a newspaper containing articles on the insanity defense that was in the jury room was read by one or possibly two of the other jurors. Hicks contends that because at least one or two jurors read the articles, prejudice should be presumed and a new trial granted.

■ Where a due process violation stemming from jury exposure to extraneous material is alleged, actual prejudice to the defendant need not be shown if a probability of prejudice is demonstrated. *State v. Stiltner,* 80 Wn.2d 47, 54, 491 P.2d 1043 (1971), *cited in State v. Smalls,* 99 Wn.2d 755, 767–68, 665 P.2d 384 (1983); *State v. Knapp,* 14 Wn. App. 101, 114, 540 P.2d 898 (1975). Moreover, prejudice might be presumed if a newspaper article attacked the defendant, expressed an opinion as to his guilt, or was a grossly unfair statement of the trial. *See State v. Adamo,* 128 Wash. 419, 422, 223 P. 9 (1924). Here no actual or probable prejudice was shown and no presumption of prejudice arises.

First, the articles in question were not specifically on Hicks' trial but rather were general factual and editorial articles, both pro and con, on the insanity defense. Further, unlike the case in *State v. Rinkes,* 70 Wn.2d 854, 859–63, 425 P.2d 658 (1967), here no allegation or showing has been made that the articles were considered by the jury in their

deliberations. Unlike the editorial and cartoon in *Rinkes,* the articles here did not go to the jury room marked as an exhibit.

Moreover, here, unlike in *Adamo,* at 420, and in *State v. Harris,* 62 Wn.2d 858, 863–64, 385 P.2d 18 (1963), the jury was not polled as to how many had read the articles. Nevertheless, the trial court more than once admonished the jury that their decision was to be based upon the evidence and exhibits presented in court. A presumption of jury integrity exists. *Adamo,* at 422. Given the general nature of the articles, which were not specifically about the present trial, in setting forth the pros and cons of the insanity defense, the facts here do not give rise to a presumption or probability of prejudice. Since no actual prejudice was shown, the trial court did not abuse its discretion in denying the new trial motion. *State v. Smith,* 11 Wn. App. 216, 218, 521 P.2d 1197 (1974).

Hicks' next contention that the State medical experts' unsolicited remarks prejudicially affected the jury verdict is without merit. Dr. Brett Trowbridge, clinical psychologist in Western State Hospital's mentally ill offenders' program, testified as follows:

> I might add that I myself observed what I thought was malingering by Mr. Hicks on virtually every occasion I spoke with him, and I think the same kind of behavior is obviously evident now here in this courtroom.

Thinking that Dr. Trowbridge meant that Hicks' seizure in the jury's presence was malingering, defense counsel made a mistrial motion, which was denied.

■ Where a trial irregularity is claimed, the question is whether the record reveals a substantial likelihood that the trial irregularity affected the jury verdict, thereby denying the defendant a fair trial. *State v. Davenport,* 100 Wn.2d 757, 762–63, 675 P.2d 1213 (1984). The court should consider whether the irregularity could have been cured by a jury instruction to disregard the remark. *State v. Weber,* 99 Wn.2d 158, 165, 659 P.2d 1102 (1983), *cited in Davenport,* at 762.

> A mistrial should be granted only when "nothing the trial court could have said or done would have remedied the harm done to the defendant."

*State v. Gilcrist,* 91 Wn.2d 603, 612, 590 P.2d 809 (1979), *quoted in Weber; accord, State v. Hightower,* 36 Wn. App. 536, 547, 676 P.2d 1016, *review denied,* 101 Wn.2d 1013 (1984).

Here the record reveals no substantial likelihood that the State expert's remark affected the jury. First, the irregularity's seriousness was minor because although the objection's basis was Dr. Trowbridge's lack of a medical background, the jury was adequately informed as to Dr. Trowbridge's qualifications. Thus, no curative instruction was necessary. Further, Dr. Trowbridge later corrected any misunderstanding by stating that he had meant that Hicks' general behavior indicated malingering.

Moreover, the remark was cumulative evidence on the issue of feigning symptoms raised by the insanity defense. *See State v. Weber, supra* at 165–66. Other evidence included the Western State Hospital report and the King County Jail psychiatric nurses' observations that Hicks feigned medical symptoms. A review of the record similarly reveals no substantial likelihood that any unsolicited remarks of Richard Peterson, another state medical expert, affected the jury verdict.

A decision as to the prejudice of statements made is within the trial court's discretion. *State v. Weber,* at 166. Here substantial evidence supports the court's finding that the defendant was not prejudiced by the State experts' remarks.

We find Hicks' other contentions to be without merit. However, one contention warrants discussion. Hicks claims that all the accumulated errors, not one of which by itself may have constituted reversible error, are grounds for a new trial. *State v. Badda,* 63 Wn.2d 176, 183, 385 P.2d 859 (1963); *State v. Oughton,* 26 Wn. App. 74, 85, 612 P.2d 812, *review denied,* 94 Wn.2d 1005 (1980).

The court in *State v. Swenson,* 62 Wn.2d 259, 276–81,

382 P.2d 614 (1963) found that due process required a new trial where the defense counsel's cross examination was impaired by the court's expression of concern for the pregnant key witness, by the key witness' occasional physical inability to continue her testimony, and by verbal courtroom attacks on defense counsel by two spectators, the key witness' mother and brother. The present case does not exhibit irregularities of similar magnitude and cannot be said to have prejudicially affected the trial's outcome. *Gilcrist*, at 612. The trial court's denial of a new trial was not an abuse of discretion. *See Gilcrist*, at 613; *State v. Marks*, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967).

The trial court's judgment is affirmed.

SCHOLFIELD, A.C.J., concurs.

WILLIAMS, J. (concurring)—The appeal challenges a number of discretionary rulings made by the trial court during the course of the proceedings. In each instance the court acted within its discretion upon the facts and circumstances before it. I join in affirming the judgment.