# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49099-4-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| MICHAEL STEPHEN BOUGARD, | |
| Appellant. | |

BJORGEN, C.J. — Michael Stephen Bougard appeals from his conviction of second degree assault, asserting that (1) the trial court erred by failing to sua sponte order a competency reevaluation during trial and (2) his defense counsel was ineffective for failing to move for a competency reevaluation during trial.[1]  We affirm.

## FACTS

On July 10, 2015, the State charged Bougard with second degree assault.  On July 21, the trial court ordered Bougard to be examined at the jail for his competency to stand trial.  The mental health evaluator at the jail could not determine whether Bougard was competent to stand trial because Bougard refused to participate in the evaluation.

---

[1] Bougard also requests that we exercise our discretion to waive appellate costs in this matter. Because Bougard's current or likely future ability to pay appellate costs may be addressed by a commissioner of this court under RAP 14.2, we defer this matter to our commissioner in the event that the State files a cost bill.

On July 28, the trial court ordered Bougard to be admitted to Western State Hospital (WSH) for up to 15 days for a competency evaluation.[2]  Bougard was admitted to WSH on August 18, 2015.  WSH staff psychologist Chadwick Dunning opined that Bougard "'lack[ed] the capacity to understand the proceedings against him and to assist in his own defense'" due to a mental disorder.  Clerk's Papers (CP) at 34 (quoting RCW 10.77.010(14)).  Dunning recommended that the trial court order Bougard to be admitted for inpatient treatment at WSH to restore his competency to stand trial.

On September 2, the trial court entered an order committing Bougard to WSH for up to 90 days for evaluation and restoration treatment.  Bougard refused to take prescribed medication while at WSH.  Bougard also refused to be formally evaluated, but he engaged in conversation with mental health evaluators "regarding his understanding of competency and the legal process for approximately 45 minutes."  CP at 41.  The mental health evaluators noted that Bougard did not present with any "symptoms suggestive of psychotic process," "was focused and able to carry on rational conversations," and "that his willingness to communicate with his attorney is likely influenced by his pattern of interpersonal relating and not due to psychotic symptoms."  CP at 42, 44.  The evaluators concluded:

> Bougard presents with no current symptoms of a mental disease or defect that significantly affect his capacity to have a *factual or rational understanding* of the charges and court proceedings he faces or his ability to *consult with his attorney with a reasonable degree of rational understanding*.  He appears to have the ability to work with and assist his attorney in his defense if he so chooses.  We therefore recommend that he return to court to resume adjudication of his pending criminal matter.

---

[2] On August 12, 2015, the trial court entered a second order for a competency evaluation at WSH that included language requiring Bougard to be transported to WSH within 7 days of the order.

CP at 45. The trial court held a competency hearing on December 2, after which it entered an order finding Bougard competent to stand trial.

At an April 13, 2016 pretrial hearing, defense counsel asked Bougard on the record whether he had an opinion about the State's request for a continuance, to which Bougard did not respond. Defense counsel told the trial court that Bougard was refusing to participate in a psychological evaluation to support a diminished capacity defense. The trial court noted the following:

> Just to make the record complete, Mr. Bougard apparently this morning refused to get dressed for jail staff in civilian clothes. He's here wearing jail attire. He has appeared to take a position throughout this case when—I've read the forensic evaluations from Western State. He's not cooperated through the forensic process believing he didn't need to be there, didn't want to participate in interviews, and didn't want to participate in competency restoration claiming himself to be competent. So he's taken sort of an antagonistic approach to his defense from day one in this case, including today refusing to get dressed.

Report of Proceedings (RP) (Apr. 13, 2016) at 9-10. The matter proceeded to a jury trial before a different trial court judge.

While discussing pretrial motions, the trial court noted that it had read Bougard's mental health evaluations. The following exchange also took place during a discussion on pretrial motions:

> [Defense counsel]: Mr. Bougard has opted to dress in jail gray. Jail gray is from the Pierce County Jail. He has the opportunity to switch into civilian clothes. He has opted not to take advantage of that option, and he wishes to proceed wearing his jail clothes.
> Is that correct, Mr. Bougard?
> [Bougard]: (No audible response.)
> [Defense counsel]: Mr. Bougard refuses to answer.

RP (May 17, 2016) at 22-23. The trial court advised Bougard that he could dress in civilian clothing so the jury would not be influenced by the appearance that he was being held in custody.

3

The trial court "strongly urge[d]" Bougard to wear civilian clothing but told Bougard that it was his decision to make. RP (May 17, 2016) at 23. The trial court ordered the State and defense counsel to "remain totally silent regarding [Bougard's] choice of attire." RP (May 17, 2016) at 24. Bougard continued to wear jail clothing throughout the trial.

After the State presented its last witness and indicated it would rest its case, defense counsel stated the following outside the presence of the jury:

> Mr. Bougard, obviously, has not really participated in the trial. He's still in jail clothes. He's not in restraints and has not been in restraints at any time that the jury has seen that I'm aware of; and it may give the impression when one reads the record, he's kind of comatose, more or less. He is awake. He is paying attention as far as I can tell.
> . . . .
> During the introduction to the ven[ire] when we first started to pick a jury, when I introduced myself and Mr. Bougard, I put my left hand on his right shoulder. Later, I understand he complained to one of the guards that he did not like that; and I appreciate being advised of that and have not done it since. I bring that—I bring that up to show that Mr. Bougard—
> . . . .
> —does have the ability to object and to voice his opinion and has done so. He just has not done so here at counsel table, and that's my record. Thank you.

RP (May 23, 2016) at 216-17.

Defense counsel then addressed Bougard's decision whether to testify, and the following exchange took place:

> [Defense counsel]: I asked Mr. Bougard if he had decided whether he would testify or not. He gave me no response, so I assume he is not going to testify. With that, the Defense will rest.
> . . . .
> [Trial court]: Mr. Bougard, I realize that you're refusing to answer or whatever; but at this time, the Court is going to make a request on the record if you wish to testify. If you do not answer, the Court will construe that as you do not wish to testify in this matter; so I think he's waived that.
> [Defense counsel]: No response.
> [Trial court]: No response. Okay. We'll bring the jury in.

RP (May 23, 2016) at 218-19.

After the trial court excused the jury to begin deliberations, defense counsel stated that he had asked Bougard whether he wanted to be present in court if the jury chose to listen to an admitted 911 recording, to which Bougard did not say "anything one way or the other." RP (May 24, 2016) at 299. The jury returned a verdict finding Bougard guilty of second degree assault.

At sentencing, Bougard filed a pro se motion to vacate, which the trial court denied. When asked whether he wanted to address the court before it pronounced its sentence, Bougard stated, "I just want to say this is—that this is, clearly, systematic deceit, unlawful conversion, and constructive fraud; and I can't participate in it." RP (June 24, 2016) at 319. The trial court thereafter imposed an exceptional 18 month sentence and 18 month community custody term based on the jury's finding that Bougard's crime was an aggravated domestic violence offense. When the trial court asked Bougard whether he would willingly provide his fingerprints, Bougard responded, "I'm not willing to give my fingerprints. I can't participate in fraud; but if I'm forced and I'm obliged to, I'm not fighting against it." RP (June 24, 2016) at 322. At the end of the sentencing hearing, Bougard engaged in a conversation with the trial court about the ability to defend against a mass shooting event.

Bougard appeals from his second degree assault conviction.

## ANALYSIS

### I. LEGAL PRINCIPLES

Due process does not allow a person to be tried or sentenced for a crime if he or she is incompetent to stand trial. *Godinez v. Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d

321 (1993). RCW 10.77.050 similarly provides, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." A defendant "is competent to stand trial if he has the capacity to understand the nature of the proceedings against him and if he can assist in his own defense." *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985); RCW 10.77.010(15). RCW 10.77.060(1)(a) requires a trial court to sua sponte order a qualified expert or professional to evaluate and report on the defendant's mental condition "[w]henever . . . there is reason to doubt his or her competency."

A court's ruling on whether to order a competency examination is reviewed for abuse of discretion. *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). A trial court abuses its discretion when it acts on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "The trial judge may make his [or her competency] determination from many things, including the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports, and the statements of counsel." *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967). We give considerable deference to the trial court's competency determination "because of its personal observation of the defendant's behavior and demeanor that is claimed to have demonstrated incompetency." *State v. Hicks*, 41 Wn. App. 303, 309-10, 704 P.2d 1206 (1985). The trial court should give considerable weight to the attorney's opinion regarding a client's competency. *State v. Lord*, 117 Wn.2d 829, 901, 822 P.2d 177 (1991). However, a trial court need not grant a motion to determine competency merely because it has been filed; the motion must be supported by a factual basis. *Lord*, 117 Wn.2d at 901.

Once the trial court makes an initial competency determination, it need not revisit the issue unless "'new information presented has altered the *status quo ante.*'" *State v. Ortiz*, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992) (plurality opinion),[3] *disapproved on other grounds by State v. Condon*, 182 Wn.2d 307, 323-24, 343 P.3d 357 (2015). In other words, a trial court does not abuse its discretion by failing to order a competency reevaluation where there is no indication that the defendant's mental condition has changed since being found competent to stand trial.

## II. RCW 10.77.060

Bougard first contends that the trial court abused its discretion by failing to sua sponte order a competency evaluation under RCW 10.77.060(1)(a).[4] We disagree.

Bougard points to three instances at trial where his conduct should have alerted the trial court for the need to sua sponte order a reevaluation of his competency to stand trial. First, Bougard identifies his wearing of jail-issued clothing and his failure to respond to the trial court's inquiry and advice against wearing such clothing at trial. Second, Bougard notes his failure to respond to inquiries by defense counsel and the trial court regarding whether he would testify at trial, which inquiries were made after the State announced it would rest its case-in-chief. Finally, Bougard identifies his failure to respond to defense counsel's question of whether

---

[3] Although *Ortiz* is a plurality opinion, the concurring opinion, and thus a majority of the justices, approved of its competency analysis. The dissenting opinions did not take issue with the plurality's competency analysis.

[4] On pages 6 and 7 in his opening brief, Bougard recites the federal constitutional rules about competency to stand trial, but does not argue specifically from them. Because Bougard did not present argument from the federal standards, he has waived challenges based on them. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

he wanted to be present in the courtroom if the jury chose to listen to an admitted 911 recording during its deliberations.

When viewed in isolation, these instances of Bougard's conduct may have presented a sufficient factual basis requiring the trial court to order a reevaluation of Bougard's competency to stand trial. However, because the trial court was not limited to its observations of Bougard's conduct and could consider several factors beyond that conduct, including his prior competency evaluation and statements from defense counsel, we cannot conclude that the trial court abused its discretion in failing to order a competency reevaluation. *Dodd*, 70 Wn.2d at 514.

Bougard's prior evaluation determining his competence to stand trial concluded that he had the ability to assist in his defense if he chose to do so and that his unwillingness to communicate with counsel was not due to any psychiatric symptom.[5] Similarly, defense counsel stated to the trial court his opinion that Bougard "does have the ability to object and to voice his opinion and has done so," but that Bougard has chosen not to communicate with him during the trial. RP (May 23, 2016) at 217. In light of these considerations, we cannot conclude that the trial court abused its considerable discretion in declining to sua sponte order a competency reevaluation. Moreover, because Bougard had previously been evaluated and deemed competent to stand trial, the trial court was not required to revisit the issue absent new information showing a change in Bougard's condition. *Ortiz*, 119 Wn.2d at 301. Bougard does not identify, and we have not located, any indication in the record that information showing such a change of

---

[5] Contrary to the assertion in Bougard's reply brief, the record clearly shows that the judge presiding over his trial had reviewed his competency evaluations.

condition was presented to the trial court. Accordingly, we hold that Bougard has not demonstrated error on this ground.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Bougard contends that his defense counsel was ineffective for failing to move for a competency reevaluation. Again, we disagree.

To demonstrate ineffective assistance, Bougard must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Performance is deficient if it falls below an objective standard of reasonableness. *In re Det. of Moore*, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009). Prejudice occurs where there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

As addressed above, for Bougard to be entitled to a competency reevaluation, there must have been a showing that his competency had changed sometime after he had been deemed competent to stand trial. Bougard does not argue, let alone demonstrate, that his counsel was aware of any change in his competency to stand trial. Accordingly, Bougard cannot show that defense counsel's performance was deficient for failing to move for a competency reevaluation. In addition, Bougard cannot show any prejudice resulting from defense counsel's decision not to move for a competency reevaluation, because there is not a reasonable probability that the trial court would have granted such a motion for the reasons set forth in the analysis above. Accordingly, Bougard's claim of ineffective assistance cannot succeed.

No. 49099-4-II

We affirm Bougard's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
BJORGEN, C.J.

We concur:

_____
WORSWICK, J.

_____
JOHANSON, J.