IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE DEPENDENCY OF: <br><br> L.D.L.N, dob 6/11/2010, and L.T.N.-M., dob 7/28/2006, <br><br> Minor Children, <br><br> DONNA NELSON, <br><br> Appellant, <br><br> v. <br><br> STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, <br><br> Respondent. | No. 78440-4-I <br> (Consolidated with <br> No. 78441-2-I) <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION <br><br><br><br><br><br><br><br><br><br><br> FILED: April 22, 2019 |

HAZELRIGG-HERNANDEZ, J. — Donna Nelson appeals the termination of her parental rights to her two sons, L.D.L.N. and L.T.N.-M. Nelson contends the trial court erred by denying her motion to appoint a guardian ad litem to represent her interests during the termination proceedings. We affirm.

FACTS

Donna Nelson is the mother of L.T.N.-M., born in July 2006, and L.D.L.N., born in June 2010.[1] Mental health providers diagnosed Nelson with schizophrenia

---

[1] The boys' fathers' rights have been terminated and they are not involved in this appeal.

and psychotic disorder.[2] Nelson also has "mild" intellectual disability, with an IQ of 63.

In September 2013, after police removed both children from Nelson's care, the Department of Social and Health Services (Department) filed a dependency petition. The court declared both children dependent as to Nelson by agreed order in January 2014. Nelson's parental deficiencies established in the dependency include mental health issues, substance abuse issues, negligent treatment of the children, and allegations of physical abuse. The dispositional order required Nelson to participate in random urinalysis testing, drug and alcohol evaluation and treatment, mental health treatment, neuropsychological evaluation, and parenting instruction. The court also entered an agreed order appointing Craig McDonald as guardian ad litem (GAL) for Nelson during the dependency.

On July 7, 2017, the Department filed a petition to terminate Nelson's parental rights. On November 2, 2017, counsel for Nelson moved to appoint Craig McDonald to represent Nelson's interests in the termination. On November 13, 2017, the court conducted a pre-trial hearing on the motion. McDonald, who was present at the hearing along with all parties and counsel, indicated that he shared counsel's concerns regarding Nelson.

The court then engaged in a brief colloquy with Nelson:

THE COURT: So, ma'am, what do you think this-this trial is about?
MS. NELSON: To get my, uh, guardian ad litem back.
THE COURT: Well, that's what this hearing is. But in-sort of the bigger question: When we have a-a trial on the termination

---

[2] Nelson's psychiatric specialist during the dependency, Cole Brower, testified that he recently changed her diagnosis to "unspecified schizophrenia and unspecified other psychotic disorder."

2

proceeding, do you know what that's about? Can you describe that to me?

MS. NELSON: That's when there's a whole bunch of people coming together, and they figure it out.

THE COURT: And what are they trying to figure out?

MS. NELSON: If the kids are willing to stay in foster home or does the kids come back.

THE COURT: Do you – what is it you would like to have happen?

MS. NELSON: The kids to be returned back home.

THE COURT: Do you-is it your understanding that it has anything to do with your participation in services and your mental health?

MS. NELSON: Yes, ma'am.

THE COURT: And what do you think it has to do with that?

MS. NELSON: To see if I'm stable enough to be able to handle it.

Following the colloquy, the court indicated that Nelson appeared competent to proceed:

And I understand this can go back and forth. What I'm inclined to do is provisionally-is have Mr. McDonald, who has a good relationship with Mom, be a sort of standby guardian ad litem, but I really don't want to interfere with Mom's autonomy if-if there's not a need. And today, there-there just isn't. She understands the nature of the proceedings. She understands what her interests are. And-and I'm not doubting that your interactions at times have been contrary to this, but what I'm going to do is provisionally appoint so that if things go to heck, Mr. McDonald can. . . step in.

McDonald agreed that "based on Ms. Nelson's responses this morning, certainly I-I couldn't possibly say, well, at this point she's not competent." The court denied without prejudice counsel's motion and appointed McDonald as standby guardian ad litem in the event that Nelson decompensated.

The termination trial commenced on January 16, 2018, with Nelson as the first witness. Midway through Nelson's testimony, her counsel renewed his motion to appoint a GAL.

The court then conducted a more extensive colloquy with Nelson regarding the purpose of the proceedings, the roles of the parties, and possible outcomes.

3

Nelson answered that she was in court "[t]o fight for my boys." She said the Department had to prove "[t]hat I'm an unfit mother," meaning "[t]hat I'm not stable enough to take care of my kids." She said the judge's role is to "make a determination" based on information from "[m]y party and their party." She indicated that the purpose of the court appointed special advocate (CASA) is to "[h]ear my statement and see what's fine for-for the boys," and that the purpose of defense counsel is "[t]o fight for me and the kids." Nelson asserted that she was able to communicate with defense counsel, and denied having any difficulty understanding his questions or advice. When asked whether she felt she needed additional assistance other than her counsel, Nelson responded "[y]eah, because he has some more timelines and everything else." When asked to clarify, Nelson explained that "[m]ore calculations in time" would "[b]e able to help me remember."

The court then gave defense counsel an opportunity to question Nelson. When asked the possible outcomes of the trial, Nelson stated "I can walk around-walk away with the children and my rights as a mother, or I can walk away with some rights and not seeing the kids." She explained that "some rights" means "that the kids will get older and they'll contact me. . . When they get 18, I'll be able to have my input-my-some rights as-and being the legal guardian without having my inputs."

Following the colloquy, the court again declined to appoint a GAL:

[W]hile it's not a sophisticated knowledge of what the process is, I do find that she is competent to proceed. She clearly understands what everybody's role is in this. She clearly understands exactly what she's fighting for and comprehends what is at stake in terms of the loss of her rights to her children and, in a layperson's manner, acknowledges that she understands that even if she loses the

4

children today, that once they are 18, they're certainly at liberty to contact her, which is not an incorrect statement. Again, I-with the understanding that Ms. Nelson does have challenges and is not a professional in this case, it appears that she does comprehend.

Counsel for Nelson did not raise the issue again during the six-day trial. On February 12, 2018, the trial court terminated Nelson's parental rights. Nelson appealed.

## DISCUSSION

Nelson does not challenge any of the findings of fact or conclusions of law supporting the termination. The sole issue on appeal is whether the trial court erred in denying counsel's motion to appoint a GAL pursuant to RCW 4.08.060 during the termination proceeding.[3]

We review the trial court's decision regarding whether to appoint a GAL for abuse of discretion. Vo v. Pham, 81 Wn. App. 781, 784, 916 P.2d 462 (1996). "A court abuses its discretion if the decision is manifestly unreasonable, or based on untenable grounds or untenable reasons." Dep't of Soc. & Health Servs. v. Paulos, 166 Wn. App. 504, 517, 270 P.3d 607 (2012).

This court is required to appoint a GAL "when an incapacitated person is a party to an action." RCW 4.08.060. The trial court also has inherent authority to appoint a GAL for a litigant in a civil matter upon a finding of incompetency. Vo, 81 Wn. App. at 784.

---

[3] Although Nelson asserts that the trial court's failure to appoint a guardian ad litem violated both RCW 4.08.060 and due process, she failed to conduct a due process analysis under Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We analyze her arguments accordingly.

"Mental competency is presumed." Id. (citing Binder v. Binder, 50 Wn.2d 142, 148, 309 P.2d 1050 (1957). Competent parties have a fundamental right to rely upon their own personal judgment and intelligence in connection with a lawsuit. Graham v. Graham, 40 Wn.2d 64, 66-67, 240 P.2d 564 (1952). But courts "[have] a duty to act to protect the rights of a litigant who appears to be incompetent." Vo, 81 Wn. App. at 785. Accordingly, "whenever the issue of a party's competence to understand the legal proceedings is raised, the trial court should conduct a hearing to determine whether the party is mentally competent or requires a GAL." Blakely, 111 Wn. App. at 358 (citing Vo, 81 Wn. App. at 786). The trial court should appoint a GAL when it is "reasonably convinced that a party litigant is not competent, understandingly and intelligently, to comprehend the significance of legal proceedings and the effect and relationship of such proceedings in terms of the best interests of such party litigant." Graham, 40 Wn.2d at 66-67. Because the trial court is able to directly observe the individual's behavior and demeanor, its competency determination is entitled to deference. See State v. Hicks, 41 Wn. App. 303, 306, 704 P.2d 1206 (1985) (competency to stand trial in a criminal case).

On the record before us, we cannot say that the court abused its discretion in concluding that Nelson met basic competency standards under Graham. The court properly conducted a colloquy at the pre-trial hearing and again on the first day of trial to consider whether Nelson met basic competency requirements. The court acknowledged that Nelson has intellectual and mental health challenges, but

concluded that she demonstrated a basic understanding of the roles of the parties and the nature and significance of the legal proceedings.

Nelson first argues that the trial court erred in failing to presume her incompetence for the termination based on the fact that she had a GAL during the dependency. This court disagrees. A litigant's prior adjudication of incompetence creates a rebuttable presumption of continuing incapacitation, thus obligating the trial court to provide an opportunity to defend against the allegation. Shelley v. Elfstrom, 13 Wn. App. 887, 889, 538 P.2d 149 (1975). But Nelson was not adjudicated incompetent in the dependency proceeding. She received a court-appointed GAL by agreed order. The trial court did not err in reassessing Nelson's competency during the termination proceedings.

Nelson further argues that the totality of the circumstances establish sufficient indicia of mental incompetence to trigger mandatory appointment of a GAL. She contends that defense counsel's opinion regarding her incompetence, her own conduct during the colloquies, and her mental health and cognitive impairments triggered a mandatory duty to appoint a GAL. Again this court disagrees.

The trial court is entitled to give "considerable weight" to counsel's opinion regarding competency. State v. Lord, 117 Wn.2d 829, 901, 822 P.2d 177 (1991). But this factor is not dispositive. Rather, the court must conduct an individual inquiry into the party's competency at the time of trial. Here, the record indicates that the trial court considered defense counsel's concerns, but determined that Nelson exhibited sufficient understanding to proceed. When asked, Nelson denied

7

having any difficulty communicating with defense counsel. We also note that McDonald, Nelson's GAL in the dependency, indicated at the motion hearing that he could not say Nelson was incompetent that day.

Nelson's conduct and testimony do not compel a different result. Nelson's testimony was sometimes contradictory, and she often exhibited a poor understanding of parental responsibilities. But the Graham standard for competency requires only that she demonstrate an understanding of the significance of the proceedings and their relationship to her best interests. The trial court did not err in concluding that she did so. She was also able to understand and respond intelligibly, if not always accurately, to questions during trial. While it would have been preferable for the trial court to directly ask Nelson whether she felt she needed McDonald's assistance, this factor alone does not mandate appointment of a GAL.

Nelson, citing Graham, further contends that a prima facie case of incompetence triggering the need for a GAL is established if a parent suffers from an untreated mental health condition such as schizophrenia which appears to impact her ability to function as a party litigant. But this is not the standard. The trial court has inherent authority to appoint a GAL after a "full and fair hearing and an opportunity to defend." Graham, 40 Wn.2d at 69. The emphasis is on the individual's overall ability to function as a litigant, not on a single factor such as a prior mental health diagnosis.[4] We note that individuals diagnosed with

---

[4] The Department cites as persuasive authority a recent unpublished decision of this court, In re Dep. of M.P., 5 Wn. App. 2d 1023 (September 24, 2018). In M.P., a mother who exhibited overt symptoms of schizophrenia during the dependency but not the termination argued that the trial court erred in failing to sua sponte hold a

schizophrenia may be competent to stand trial. State v. Harris, 114 Wn.2d 419, 429, 789 P.2d 60 (1990).

An individual's competency may change over time. Hence, the focus of the inquiry is on the party's current competency. See Vo, 81 Wn. App. at 791 (party's actions prior to trial do not establish whether party was competent at the time of trial). Notably, there was evidence that Nelson's mental health fluctuated significantly. She was involuntarily hospitalized on several occasions, but was released once she compensated. Several of Nelson's service providers testified regarding interactions where she did not exhibit mental health symptoms. And although Nelson admitted that she stopped taking her medications, she does not allege that she was symptomatic at the time of trial and her testimony appears unremarkable in that regard.

We are mindful that parents are afforded greater due process rights in termination proceedings than in dependency proceedings because of the constitutional issues at stake. In re Welfare of R.H., 176 Wn. App. 419, 309 P.3d 620 (2013). Nelson has mental and intellectual challenges, and did not present well as a witness. However, under the specific circumstances of this case, we cannot say the trial court abused its discretion in determining that Nelson was not incompetent at the time of trial under Graham and denying her motion to appoint a GAL.

---

competency hearing. Based on the presumption of competence, defense counsel's opinion that the mother was competent, her current competency at trial, and the absence of rebutting evidence, this court held that the trial court did not abuse its discretion. M.P. supports the Department's assertion that a diagnosis of schizophrenia does not mandate appointment of a GAL. However, unlike Nelson's case, defense counsel in M.P. expressly vouched for the mother's competency.

No. 78440-4-I/10

Affirmed.

WE CONCUR: