[No. 25996. Department One. April 24, 1936.]

THE STATE OF WASHINGTON, *Respondent,* v.
KENNETH W. McKEEN, *Appellant.*[1]

*Sam R. Sumner* and *Harvey F. Davis,* for appellant.
*Sam M. Driver* and *L. J. Gemmill,* for respondent.

STEINERT, J.—This is an appeal from an order denying a motion to vacate a judgment of conviction and sentence in a criminal case.

By information filed in the superior court of Chelan county September 11, 1935, defendant was charged with the crime of grand larceny. On the following day, he was arraigned and given twenty-four hours in which to plead to the charge, after which he was taken to the county jail. There, after some discussion with

[1]Reported in 56 P. (2d) 1026.

the sheriff, defendant decided to plead guilty. The sheriff immediately escorted him back to the court-room, where he entered a plea of guilt. The court then entered a judgment of conviction and sentenced him to the penitentiary. Defendant was not represented by counsel in any of these proceedings.

On the day following, defendant's father, living at Tacoma, came to Wenatchee and secured the services of an attorney to investigate the case, with the view of determining the justification of the charge, the plea of guilt, and the sentence. As a result of his investigation, the attorney thus retained served upon the prosecuting attorney a motion to vacate the judgment and sentence and to permit the defendant to change his plea from "guilty" to "not guilty." Accompanying the motion were a number of affidavits in support of the application. Resisting affidavits were filed by the prosecuting attorney. The appellant's motion was regularly heard by the court on October 9, 1935, on these affidavits. After full consideration of the matter, the court denied the motion. This appeal was then taken by the defendant.

The only assignment of error is that the court erred in denying appellant's motion to vacate the judgment and refusing to permit him to change his plea from "guilty" to "not guilty." For a clearer understanding of appellant's contentions, a further statement of the facts is necessary.

Appellant is about thirty-five years of age. In April, 1933, he entered the employ of True's Oil Company, which was then engaged in the business of selling gasoline, greases and lubricating oils in Eastern Washington, with its main office in Spokane. Appellant was put in charge of the Wenatchee district, comprising Chelan, Okanogan and Douglas counties. No office, however, was maintained at Wenatchee.

The company shipped its products to Wenatchee, where they were stored in bulk tanks or containers. Appellant's duties were to make sales of the products, deliver them by truck to various service stations in the district, collect the money therefor and deposit the same in the company's bank account in Wenatchee on the next day after he had collected it. The appellant was supplied with sales books, made up of duplicate invoices, numbered consecutively, for use in his sales. On making a sale, it was his duty and custom to fill out and deliver to the customer the original invoice, showing the details of the transactions, and to send in the duplicate copy to the main office in Spokane. He was also required to make daily and monthly reports of his sales to the company. Appellant had no books to keep, as all bookkeeping was done at Spokane. His sales averaged about three hundred dollars a day, in amounts ranging from five dollars to one hundred twenty-five dollars. At times, the money in his possession amounted to as high as two thousand dollars, owing to the fact that on Sundays and holidays he was unable to deposit it in the bank.

In the spring of 1935, a shortage developed in appellant's accounts, the reason for which appellant said he could not understand. The company, however, was not at that time informed of the fact. By March or April, the shortage amounted to two hundred dollars, and, in order to keep his accounts straight, appellant secured a loan in that amount and sent in the money as a part of his collections. Each month thereafter, however, the shortage continued, and, to offset it, appellant, during the summer, altered a number of the duplicate sales slips in such a way as to make his cash balance with his inventory. These altered slips, he sent in to the company.

In August, 1935, the company wrote to appellant,

calling his attention to the fact that his reports were coming in late. Shortly thereafter, appellant went to Spokane to consult the officers of the company with respect to that matter, and it then developed that he was short nearly nine hundred dollars. Appellant insisted, however, that he had not taken the money, but he could not explain the reason for the shortage. This was the company's first knowledge of the condition of affairs.

It was agreed that the parties should hold another conference in Wenatchee on the following day, which was done. There, upon further investigation, the officers of the company were apprised of the details concerning appellant's method of altering the invoices. As a result of the conference, a written statement was prepared, which appellant signed. In that statement, appellant admitted taking $882.45 from the company, without authority. After signing the statement, appellant accompanied the officers of his employer to the office of the prosecuting attorney, where, after a further consultation, an information was prepared, pursuant to which appellant was immediately placed under arrest.

The position taken by appellant in his affidavit is that the statement which was signed by him was untrue; that, although he was unable to account for the shortage, he, nevertheless, did not take the money himself; that the officers of the company induced him to sign the statement by telling him that he was liable to prosecution for embezzlement because of the discrepancy in his accounts; that it was represented to him that the purpose of having him sign the statement was simply to afford evidence to the state tax commission of loss sustained by the company; that the officials of the company promised him that, if he should tell the whole story and repay the money, there would not only

be no prosecution, but that he could retain his former position; that, in his depressed state of mind and because of the impending disgrace to his family, any avenue of relief appealed to him as the one to accept; that he did not understand that the office to which he was taken by the officials of the company was that of the prosecuting attorney; that, after he had been arraigned, the sheriff advised him to plead guilty and thus obtain clemency; and that, because of his worry and fear, he had entered a plea of guilty.

In the counter-affidavits filed by the prosecuting attorney, the claims of appellant were denied. It was further alleged therein that, during the conferences at Spokane and Wenatchee, appellant had frequently changed his story regarding his shortages; that he had not made a clean breast, at one time, of all the alterations of the duplicate sales slips, but had confessed them one at a time and only after repeated questioning; that, after the written confession had been prepared, appellant had read it over carefully, and, after making a correction therein in his own handwriting and further discussing each item separately, he had voluntarily signed the statement; that appellant had never, by promises or threats, been induced to sign the confession; that, in the final conference, appellant admitted that he had spent the money from month to month; that he further admitted that he had kept a record of the falsified invoices in a book, but that he had recently burned the book; that, at the office of the prosecuting attorney, appellant was asked whether he had signed the confession and whether it was true, and that appellant had replied in the affirmative; that he reiterated to the prosecuting attorney his statement with reference to burning the book containing a record of his falsifications; that appellant inquired of the prosecuting attorney what the penalty for his offense

would likely be and that the prosecuting attorney explained to him the method of fixing maximum and minimum sentences. It is conceded that appellant was short in his accounts to the extent of $882.45.

It was upon the showing made by these affidavits that the trial court ruled on the motion to vacate the judgment.

Rem. Rev. Stat., § 2111 [P. C. § 9164], provides:

"At any time *before judgment,* the court *may* permit the plea of guilty to be withdrawn and other plea or pleas substituted." (Italics ours.)

Under that section, the application to withdraw the plea of guilty is addressed to the sound discretion of the trial court, to be liberally exercised in favor of life and liberty. *State v. Cimini,* 53 Wash. 268, 101 Pac. 891; *State v. Scott,* 101 Wash. 199, 172 Pac. 234.

Application made under that section of the statute, however, must be presented before judgment. *State v. Scott,* 101 Wash. 199, 172 Pac. 234; *State v. Anderson,* 109 Wash. 161, 186 Pac. 266.

When the application is made *after judgment,* it will be considered only as an application to vacate such judgment under Rem. Rev. Stat., § 464 [P. C. § 8130], *et seq.,* providing for vacation and modification of judgments generally, and, in such case, the judgment, unless absolutely void, is entitled to every reasonable intendment in its favor and will not be set aside except upon a clear showing of irregularity or fraud in its procurement and a tender and adjudication of a *prima facie* defense on the merits. *State v. Scott,* 101 Wash. 199, 172 Pac. 234; *State v. Roberts,* 136 Wash. 359, 240 Pac. 3; *State v. Baforo,* 146 Wash. 312, 262 Pac. 964.

When the court has exercised its discretion upon a motion to vacate a judgment and sentence, that discretion will not be disturbed, on appeal, in the

absence of a showing of abuse thereof. *State v. Benjamin,* 161 Wash. 207, 296 Pac. 548.

In this case, the application for permission to change the plea came after judgment. Upon the record before us, we are satisfied that the court did not abuse its discretion in denying the motion.

The order appealed from is affirmed.

MILLARD, C. J., TOLMAN, and MITCHELL, JJ., concur.

GERAGHTY, J. (dissenting)—I cannot escape the impression that there is here a miscarriage of justice. I think the judgment calls for reversal and direction to the superior court to permit the defendant to plead further to the information, as was done in *State v. Allen,* 41 Wash. 63, 82 Pac. 1036, a case in many of its features like the one before us.

The conduct of the appellant was not that of a man conscious of guilt. He voluntarily sought the aid of his employer to help him straighten out his confused accounts. Caught in the web of circumstance, without experience, in the absence of disinterested advice or time for reflection, he was harassed into a precipitate confession of guilt, followed by the immediate imposition of sentence. It may be that he is guilty, but, even so, he should have the question submitted to a jury. As was said in *State v. Allen, supra:* "If the defendant is guilty, it ought not to be difficult for the state to prove it to the satisfaction of a jury."

I therefore dissent.