[Nos. 39007, 38990.    Department One.    February 20, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRY LEE DODD, *Appellant.*

*In the Matter of the Application for a Writ of Habeas Corpus of HARRY LEE DODD, Petitioner, v. B. J. RHAY, as Superintendent of the State Penitentiary, Respondent.\**

*Reported in 424 P.2d 302.

*Hamblen, Gilbert & Brooke (Wm. F. Nielsen,* of counsel) (Appointed counsel for appeal), for appellant.

*George A. Kain* and *Matt L. Alexander,* for respondent.

*Harry Lee Dodd,* pro se.

*The Attorney General* and *Earl Lasher, Assistant,* for respondent.

HALE, J.— ▇ Perhaps one who prefers confinement in an institution for the criminally insane to imprisonment in a regular penitentiary really is deranged. But the law makes no such assumption and vests in each trial judge a wide discretion in judging the mental competency of every defendant to stand trial or plead guilty. The trial judge may make his determination from many things, including the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.

Here the trial judge made such an evaluation, found the defendant mentally competent to plead guilty to larceny by check and thereafter denied the defendant's motion to va-

cate the judgment and sentence. Defendant urged his motion on the grounds that he lacked mental competency to enter a plea at arraignment, and also that the prosecuting attorney had falsely induced him to plead guilty by promising that he would not be prosecuted on other checks.

By information, the prosecuting attorney for Spokane County charged Harry Lee Dodd with grand larceny by check, letting it be known unofficially that his office possessed sufficient evidence to charge the defendant with 8 to 14 additional counts involving other checks and a possible count for auto theft. The court appointed experienced counsel for Mr. Dodd and deferred further proceedings pending examination of the defendant's mental condition.

Dr. Sol Levy, specialist in psychiatry and neurology in Spokane, on December 31, 1964, submitted to the prosecuting attorney his report of the defendant's mental condition, pointing out that nearly all of his observations perforce came from the defendant's own statements concerning his commitments to mental hospitals, and concluded with the statement:

> I therefore suggest that if at all possible, he be committed to Eastern State Hospital for observation for a period of thirty to sixty days during which time his behavior could be observed closely, all the necessary tests could be taken, and more objective information could be obtained from various sources regarding his background. I might add, however, that he seems quite evasive, covering up and utilizing, as mentioned above, his commitments to cover up for himself.

Thereupon, on defendant's motion of January 15, 1965, for his transfer to Eastern State Hospital "for observation as to his mental responsibility," the court directed the hospital superintendent to report on defendant's mental capacity within 90 days to the court, prosecuting attorney, and defense counsel. Accordingly, February 19, 1965, the Superintendent of the Eastern State Hospital by letter submitted a formal report signed by him and two other doctors on the hospital staff.

The report states, *inter alia*:

The above-named patient was admitted to this hospital January 15, 1965 to determine whether he was competent to stand trial on a charge of grand larceny. . . .

Briefly, this man relates that he was first placed in an institution at age 12, has been institutionalized 18 times in his life and has never been out of an institution for a period longer than 5 months. He is careful not to say that he has been hospitalized, and later information reveals that, although this man has indeed been in mental hospitals, a number of these institutionalizations appear to have been in penal institutions. It is reported that usually when he is arrested he affects the appearance of insanity, is transferred to a mental hospital, and then frequently is

released from these institutions after a short period of time.

. . . .

Shortly after our initial interviews with this man, we received a copy of his F. B. I. record and he was confronted with this. At this time his mental faculties seemed to clear rapidly and he recalled the circumstances and events about each of his arrests. At this time it was also noted that his peculiar gait and other neurological symptoms disappeared. It should perhaps be noted that this patient has had some nurse's training and has spent considerable time in psychiatric institutions, both as a patient and possibly also as an attendant, so that he might have had an opportunity to observe the behavior and actions of mentally unbalanced people and is now using this knowledge in order to attempt to feign mental illness. From the time that he was confronted with the fact that his physical symptoms did not fit into any known disease entity and also since confronted with his F. B. I. record, there has been no sign of mental confusion or physical disability. The patient has frequently stated since then that he would like to return to jail, stand trial on his charges, and serve whatever sentence might be imposed upon him.

It is our impression that Mr. Dodd is not psychotic at this time and that he is capable of standing trial and aiding in his own defense. I also believe that Mr. Dodd knew the difference between right and wrong during the early part of November, 1964, which is the period during which the crime in question was committed. It is therefore our recommendation that he be returned to your jurisdiction for your further disposition.

February 26, 1965, the defendant appeared with his counsel before the superior court for arraignment on the charge of grand larceny. Before entering his plea, the information was read and defendant stated in open court that he understood the charge; that he had conferred with his attorney; and that he knew of his right to trial by jury and to be confronted with witnesses.

Defendant acknowledged that on January 25th he had, in his own handwriting, written from Eastern State Hospital to the prosecuting attorney that he did not consider himself insane, and had requested to be returned to court from the hospital even though his attorney "may not want to go along with this." He likewise acknowledged writing another letter on February 16, 1965, from Eastern State Hospital which said that he had been found sane, desired a speedy trial, and intended to dismiss his attorney. During the arraignment, defendant also said that he felt capable of appearing pro se. He then entered his plea of guilty and the court, after hearing from counsel, sentenced him to a maximum term of 15 years' imprisonment.

About 8 months later from the penitentiary at Walla Walla, defendant, on November 18, 1965, filed in Spokane County what is designated as a motion to vacate the judgment and sentence. Following appointment of counsel, his attorney promptly amended the motion purportedly to bring it within the terms of RCW 4.72.010-090, the statutes which provide for vacation of judgments within one year from entry.

■ Although doubts survive whether RCW 4.72.010-090 apply to judgments in criminal cases, we need not discuss that point for it was not raised here. This court has, on occasion, treated an application to withdraw a plea of guilty after judgment as a motion to vacate, so we are persuaded to consider the merits even though RCW 10.40.175 concerning criminal judgments implies that a plea of guilty may not be withdrawn after judgment. *State v. Taft,* 49 Wn.2d 98, 297 P.2d 1116 (1956); *State v. McKeen,* 186 Wash. 127, 56 P.2d 1026 (1936); *State v. Roberts,* 136

Wash. 359, 240 Pac. 3 (1925); and *State v. Scott*, 101 Wash. 199, 172 Pac. 234 (1918). We go to the merits also because the defendant includes in this appeal an original petition for habeas corpus raising the same questions as in his purported motion to vacate the judgment and sentence.

Our digression on procedural questions has been undertaken to show that there may come a time when, to avoid undue repetition and duplication in appeals, RCW 4.72.010-090 will be restricted to civil cases, leaving review of criminal judgments to other definitive methods prescribed by law under the constitution.

Returning to the merits, we see little basis on which to grant defendant relief, either by motion, habeas corpus or otherwise. At his arraignment February 26, 1965, following his return from observation at Eastern State Hospital, defendant, with his counsel present, entered a plea of guilty. The prosecuting attorney stated that his office had a total of 14 other checks written by defendant upon which charges could be brought; he added that defendant had been convicted of assault with a deadly weapon in a state court and of a crime involving interstate transportation of securities in a federal court, and also had been convicted of several misdemeanors.

Defendant's attorney at arraignment told the court that he had discussed the case several times with his client, that according to defendant, no promises had been made to him, and that defendant had said he wished to plead guilty. The attorney declared that defendant had said he understood the charge against him and wanted to plead guilty to get started serving his time.

Defendant likewise made a statement on his own behalf pointing out that he had been in institutions many times, but not always for crimes; that on some occasions criminal charges against him had been dismissed because he had made restitution, and on others he had been sent to mental hospitals. He did not specify whether he had ever been committed to mental hospitals for treatment or sent there simply for observation.

The attorney who represented defendant at the arraignment later made an affidavit, February 4, 1966, in support of defendant's position to vacate the judgment and sentence. This affidavit said that the prosecuting attorney, prior to arraignment, had informed counsel that he could charge defendant with writing eight bad checks on November 7, 1964, but would drop all except one charge arising from them if defendant would enter a plea of guilty to that one count.

The attorney's affidavit stated that he had advised defendant not to plead guilty for he believed that "Harry L. Dodd has the meritorious defense of insanity to all charges arising out of checks written November 7, 1964." Counsel in his affidavit then urged, as does counsel on appeal now, that with the filing of four counts of grand larceny against defendant in justice court, the defendant has somehow been wrongfully induced or coerced into pleading guilty.

■■ A plea of guilty is a formal admission of guilt. In making it, one acknowledges full responsibility for all legal consequences of guilt and consents to whatever judgment and sentence the court may legally impose. *In re Brandon v. Webb*, 23 Wn.2d 155, 160 P.2d 529 (1945); 21 Am. Jur. 2d *Criminal Law* § 495 (1965). If a person is mentally competent to enter a plea, that is, if he understands his constitutional rights to process and counsel, confrontation of witnesses, freedom from compulsion to testify, right to trial by jury, knows the nature of the charge against him, and is capable of understanding the legal consequences of guilt, then he is free to enter a plea of guilty despite the advice of his attorney.

■ If a defendant has sufficient intelligence to rationally choose whether to stand trial, plead guilty, or enter a plea of mental irresponsibility, the choice is his—not that of his attorney—for the constitution gives him the right to appear and defend either in person or by counsel. Const. art. 1, § 22. Whether the defendant possesses requisite mental competency to make a plea of guilty rests largely within the trial court's discretion, and acceptance and entry of the

plea by the court will not be overturned except in clear cases of abuse of such discretion.

At arraignment, as we have observed, the trial court heard the defendant and his attorney, listened to a recital of his personal history, and considered a medical report signed by the Superintendent of Eastern State Hospital and two other doctors. These proceedings, combined with defendant's appearance and his comments and answers to extensive inquiries by the judge, all supplied the judge with a basis upon which to exercise a judicial discretion that the defendant was mentally competent to stand trial or to enter a plea of guilty. Acceptance and entry of the plea of guilty by the trial judge in a sound exercise of his discretion resolves the question of defendant's mental competence, both as to the defendant's mental competency to be tried and his legal responsibility for the crime admitted. We find nothing in the record indicating that the trial court abused its discretion in entering defendant's plea of guilty and imposing judgment and sentence thereon.

The other point, although subsidiary requires comment. Defendant asserts that the prosecuting attorney induced him to plead guilty to one count of grand larceny by promising to drop all other charges against him, and that the inducement turned out to be false because the prosecuting attorney did file four counts of grand larceny against him in a justice court complaint.

As we have seen, the prosecuting attorney, in relating the circumstance of the crime and defendant's history, informed the court that his office had some 14 checks upon which separately to charge the defendant with grand larceny, mentioning, too, that witnesses had identified defendant as the man who passed the checks. Defendant's attorney, in the course of making a statement at the arraignment, said:

I want the Court to know that I discussed the matter several times with Mr. Dodd. He hasn't always agreed with me, but I made no promises to him, and he has

stated there have been no promises made to him, and that he wants to plead guilty. I have come over and advised him he could receive one to fifteen years sentence for the crime.

Before imposing sentence, the trial court then gave defendant full opportunity to speak on his own behalf, and the defendant made no mention of any promises or inducements to the effect that the state would refrain from filing any other charges.

We need not decide the related question of whether a prosecuting attorney can bind his successors in office and the State of Washington to a promise not to prosecute a crime of which he has sufficient evidence to warrant a conviction, for that question is not before us. Other than a mention of the filing of a justice court complaint charging four other counts of grand larceny, the record does not show that the prosecuting attorney has superseded the complaint by information or taken any action whatever to have defendant arraigned or brought to trial thereon.

That the trial court believed the state was not prosecuting defendant on additional counts as claimed by defendant is seen from a provision in the order denying vacation of the judgment and sentence which reads:

that if additional felony charges of Grand Larceny by check involving checks executed on the same day, involving the same or similar circumstances as the charging check set forth in the Information on file herein are filed against the defendant, then in such event the defendant may renew this motion.

Since defendant did not establish as a fact his claim of false or coercive inducement to plead guilty, the foregoing provision in the order denying vacation of judgment and sentence is surplusage and neither adds to nor detracts from its operative effect. To the ancient maxim, *surplusagium non nocet,* surplusage does no harm, we would add that it does no good either, and must be regarded as superfluous.

The writ of habeas corpus, No. 38990, is denied, and the judgment in No. 39007 is affirmed.

HILL, ROSELLINI, and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.