IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35287-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICARDO G. GONZALEZ GARCIA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted Ricardo Gonzalez Garcia of attempting to elude a

pursuing police vehicle. On appeal, Gonzalez Garcia contends his trial counsel and the

trial court should have questioned his competency to stand trial. We reject the argument

because of lack of evidence of incompetency and affirm Gonzalez Garcia's conviction.

FACTS

On January 29, 2017, Trooper Camron Iverson traveled eastbound on Interstate 90

(I-90) in Grant County. A maroon Pontiac traveling westbound passed Iverson at a high

speed. Trooper Iverson immediately crossed the freeway's median into westbound

traffic, activated his patrol car's emergency lights, and accelerated the car toward the

Pontiac. After traveling five miles at a speed of 125 miles per hour, Trooper Iverson

pulled even to the Pontiac, which Iverson paced at 100 miles per hour. The Pontiac then veered onto I-90 Exit 149 near George.

Warden Police Officer Gregory Talbot, while off duty, traveled westbound on I-90 at the same time. Officer Talbot estimated an erratically driven maroon Pontiac passed his vehicle at 95 miles per hour. Once the Pontiac exited I-90, Officer Talbot joined Trooper Camron Iverson in pursuit.

After exiting the interstate, the Pontiac sped through a stop sign and traveled northbound on State Route 281 with Trooper Camron Iverson and Officer Gregory Talbot behind. Trooper Iverson, at one juncture, pulled his patrol car alongside the Pontiac and signaled the driver to pull over. Iverson, on his vehicle's public address system, also commanded the driver of the Pontiac to stop. The Pontiac sped further.

As the Pontiac approached Grant County's Road 6, the car slowed, activated its signal, and turned left. Trooper Camron Iverson estimated he pursued the Pontiac on State Route 281 for half or three quarters of a mile. The Pontiac eventually stopped in a cattle feedlot. Ricardo Gonzalez Garcia exited from the driver's seat of the car.

## PROCEDURE

The State charged Ricardo Gonzalez Garcia with attempting to elude a pursuing police vehicle. At his arraignment, Gonzalez Garcia did not answer questions from his attorney or the trial court, and the trial court entered a plea of not guilty at the attorney's request.

2

After his arraignment, Ricardo Gonzalez Garcia wrote a series of letters to the court. Gonzalez Garcia does not speak or read English. Gonzalez Garcia wrote all letters in Spanish, and someone translated the letters into English for purposes of the trial court record. We do not know if the trial judge read the letters. The State challenges the accuracy of some of the translations. We do not know to what extent, if any, the rambling nature of the letters results from Gonzalez Garcia's lack of command of language or the inherent problem of translating from one language to another.

Gonzalez Garcia's first letter, on February 27, 2017, read:

> With respect and I don't know what rights I have or any person here in this court. But days ago I told that lawyer of the state that I don't want him to have my case but he is stubborn to present me before 2 courts that I've had. I do this just to see what the court's opinion is on my case. Because I have not seen such delight without wanting. You can see your honor. On this I can explain but don't resist me. Thanks and sorry for bothering you.
> Ricardo Gonzalez

Clerk's Papers (CP) at 14. Gonzalez Garcia wrote next on March 1, 2017:

> Before anything I'm sorry your honor for being a bother. But I can't take it anymore and if you could please help me in my next court on what I'm going to explain.
> I worked in Quincy WA road 6 for the dairy farm of Mr. Mike and the supervisor Jose Luis Olivares. I want and it would help me if you could answer these questions, I would appreciate it. With respect I ask that you not laugh at me. Did I Ricardo Gonzalez get or did the put in mi a way of communicating and something more "I really don't know" but it's something similar to "Bluetooth." I have seen this in the majority of people and it's as real as we are alive. Did the government put this in me or did Jose Luis and Mike? How did they put it in, while I was sleeping? Is this or is it not normal? I began to notice 2 to 3 months ago. I hadn't said

3

anything because I was embarrassed.  But I'm now very sure that this is
real.  I will wait for your response or for you to let me know during my next
court.  Thank you and I seriously await your response.
Ricardo Gonzalez

CP at 14.  The following day, March 2, 2017, Gonzalez Garcia wrote:

Much respect for you your honor.  I don't think I explained myself
in my previous request done on the date 2/17/2017.  I Ricardo Gonzalez
with respect and concern asked if you as the "government" could let me
know about my brother Dario Gonzalez being in prison of WS Virginia
Hazelton Bruceton.  Because I have many months how is he, is he well or
did something happen to him, does he live or is he dead, concerned family
and we are all human right?  The court responded this, "sorry we don't
have any info on your brother" but can you inform me? You can right?
I'm sorry, I hope you understand me!
Thanks
Ricardo Gonzalez

CP at 14.

On March 8, 2017, Ricardo Gonzalez Garcia wrote to the court:

Before anything all my respect to "the court."  In any matter I'll
explain as a person and human being that I am.  A few days ago due to 1 or
two little mistakes I made, speaking clearly and sincerely, an officer didn't
let me eat!  And because of things that God allows or whatever that action
was overlooked.  Now on this date 3/7/2017 at 23:18 the officer "Coomes
Brent cp !" punished me and gave me a paper that said I had various
charges, which truly isn't right the only thing that I "Ricardo Gonzalez" am
responsible for is cutting a piece of my blanket to cover my feet from the
cold and make myself underwear because I didn't have any.  As a man that
I am in no moment did I disrespect "that officer" he handcuffed me, he
grabbed me by the collar of my shirt.  And he "rozo" of the smoothest that
could be without wanting or however the court would see it my beard in his
glove and in turn this officer while I was handcuffed threatened to hit me I
told him that he could but we knew that he couldn't and he shouldn't.  He
continued and tried to assassinate me! Grabbing me and hitting me against
the floor to the point that my head was hit against the floor.  The truth is

4

that I made a copy of this paper in case they didn't let the other one I sent on 3/8/2017 get to you. I don't have nor will I have any personal problems against the officer "Coomes Brent cp!! But with respect I desire and you your honor or the government give and analyze this about what the law states. Many apologies if I don't express myself well since I'm from a farm. The officer has a bad head I say it and confirm it by what he did. Thanks Ricardo Gonzalez

CP at 32. Then on March 19, Gonzalez Garcia wrote:

With much respect for the court, I Ricardo Gonzalez need this humble request to have officer Wevson [sic] or whatever his name is, truth is I don't know much English but seeing him I would recognize him, my request is to have the officer who arrested me who knew and still knows how they have me connected with something like Bluetooth, did they inject me or how? I would like the officer to be present with me before the court. Without lies or scams I hope the court of justice will grant me this. Thank you! Ricardo Gonzalez.

CP at 21.

On April 4, 2017, Ricardo Gonzalez Garcia wrote to the court:

With respect and I do not stand against the law. An officer supposedly accuses me of trying to flee I am sure not. On the contrary here I will tell you all of the things that have happened and the government now has to know them.

First, they joke about me where I used to work and they fire me.

Second, I don't know why two officers took me out of a hotel, they kept my identification.

Third, As said I was arrested and incarcerated unfairly, once her I'm placed in a cell for punishment, they try to assassinate me Officer "Coomes Brent" and they tell me I'm going to be deported. Seriously, what did I do?

Forgive my boldness but that how it is, just to see what you think.

And my car should not be moved from where I left it.

1st it's at a federal place

2nd I didn't try to escape

3rd I was not arrested by the officer for a crime or for possession of something against the law.

5

Once again thank you.

CP at 25.

On April 8, 2017, Ricardo Gonzalez Garcia wrote two letters to the court.  The

first letter read:

With respect I need to know what happened to my car?  I sold it to
Jose Luis Olivares for $2,800 and I left at the door of his house.  He knows
where the title is.  Go for it and I will sign it when I get out.  Or if he needs
it sooner let him know how to send it to me and I'll sign it here.
Thanks for helping us!

CP at 29.  The second letter read:

With respect I have wanted to know about my brother.  Dario
Gonzalez Garcia.  At the Hazelton Prison in WV USA.  But I have not been
able to.  God willing he is alright.  Does this make you laugh?  Why do you
joke?  Sorry, and thank you.  You know I don't have any crimes that's why
I dare to say this without offense.  Ricardo Gonzalez

CP at 29.

On April 14, 2017, Ricardo Gonzalez Garcia wrote three letters.  The first letter

read:

Excuse my boldness but with sincerity I don't if as a joke or in
reality people from the government or simply other people tell me many
things in my ear that I don't think are right.  I ignore them.  What I can't
ignore is that they tell me that my brother Dario Gonzalez Garcia a prisoner
at the prison of "Hazelton Mills WV" was killed by an officer.
Wholeheartedly I hope you understand me your honor.  And I'll gladly wait
for your response.  Thank you very much.  Ricardo Gonzalez.

CP at 32.  The second April 14 letter read:

Beforehand I apologize for my bothering you. But another issue that I would like you to analyze and know your honor and the court is that in my phones I made calls and made one call to "911" and I was not helped. Truly I don't know what was happening with my cellphone it's one that was left in my car when I was arrested. And in the other two that I bought after I noticed strange things and not good for me, my family, and for the government. Can something be done about what I've explained and I ask it be analyzed? Hopefully it can. Thanks Ricardo Gonzalez

CP at 32. The final letter of April 14 read:

Before anything forgive me I know I have offended the court and the attorney that I was assigned by the court of the state. On the other hand I don't feel guilty of what I'm being accused of. But you have the order. My respect for the government just like to other people. But I felt offended by some of the questions that my attorney asked. Such as telling me I will be deported to my country. Is my attorney in the just? Or can the court of the state assign me a new one? Sorry and thank you. Ricardo Gonzalez.

CP at 32-33.

Ricardo Gonzalez Garcia wrote his last letter to the court on April 17, 2017, which

letter read:

Your honor with respect but I don't feel good knowing well that the government my respect, and the same the race of the street including Jose Luis Olivares have laughed at me and I believe even publicized the truth something shameful. But I feel it's not of the law, they publicized me or are accusing me of having seen on my cell phone videos for adults and I don't deny having done things like every man, normal things. Over that they took my phone or they got into my phone. I say this because how can this happen or who has done it? To go into my phone, my internet, and publicize me, in my personal and private things like any normal person. Can you help me with this? For me it is grave and shameful and the same for the government. I have a daughter, and I don't want to have misunderstandings. I ask and urge something be done. Thank and many apologies. I have never ran from an officer he knows!

7

CP at 33.

On March 24, Ricardo Gonzalez Garcia also wrote a letter to an unidentified

person at the jail:

> Miss, I have realized herein block D Cell 8 of this jail by the officer whose name I don't know have in common or such communication truly exactly I don't know but that's not the problem. Because I have seen it in the majority of people. Why haven't they told me when or how they put this on me? Because of this communication and other actions in Mr. Mikes Farm I noted that I'm being accused of crimes as if I had raped a minor and things like that! This is important and I urge you to respond during court. Or if sooner that's better I am with your government and desire to clear this up. I have a daughter in Mexico, that's why it' urgent.
> I need "Jose Luiz Olivares" to be present in court due to some charges or lawsuits that I will say in court. I have my motives and with proof. Something serious I expect the court to grant this. It has to do with publicizing child pornography! Without my consent and there are other people. Seriously. "thank you"

CP at 18.

Before trial, Ricardo Gonzalez Garcia appeared at a readiness hearing with

counsel and a certified interpreter. Gonzalez Garcia remained silent during the hearing

and his counsel informed the court that Gonzalez Garcia was prepared to proceed to trial

two days later.

Trial proceeded on May 10, 2017. The State claims that nothing in the record

demonstrates remarkable behavior of Gonzalez Garcia or expression of any

dissatisfaction with counsel during trial. Gonzalez Garcia did not speak on the record

during the State's case-in-chief. He spoke off the record with his attorney at the close of

the State's case. Gonzalez Garcia called no witnesses and rested.

The jury returned a guilty verdict. Ricardo Gonzalez Garcia did not speak at the return of the jury. During sentence, the sentencing court asked Gonzalez Garcia if he wished to speak, and he responded, through his interpreter, "[n]o, thank you." Report of Proceedings (May 15, 2017) at 14.

## LAW AND ANALYSIS

The issue on appeal is whether Ricardo Gonzalez Garcia's trial counsel performed ineffectively by failing to request a competency evaluation of this client and whether the trial court committed error by not addressing Gonzalez Garcia's mental status.

Criminal defendants who lack the capacity to understand the nature and object of the proceedings against them, to consult with counsel, and to assist in preparing their defense may not be subjected to trial. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *In re Personal Restraint of Benn*, 134 Wn.2d 868, 932, 952 P.2d 116 (1998). A competency hearing is required "[w]henever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency." RCW 10.77.060(1). Thus, unless an insanity defense is raised, a hearing is required only if the court makes a threshold determination that there is reason to doubt the defendant's competency. *State v. Lord*, 117 Wn.2d 829, 901, 822 P.2d 177 (1991), *abrogated on other grounds by State v. Schierman*, 415 P.3d 106 (2018). In determining whether to order a formal inquiry, courts consider the defendant's appearance, demeanor, conduct,

9

personal and family history, past behavior, and medical and psychiatric reports. *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967); *In re Personal Restraint of Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001).

The determination of whether a competency examination should be ordered rests generally within the discretion of the trial court. *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). This court reviews a trial court's exercise of discretion for abuse. *State v. Lord*, 117 Wn.2d at 901.

The appellate record lacks evidence, other than comments in some letters, of Ricardo Gonzalez Garcia being incompetent. The record lacks any mention of Gonzalez Garcia's personal and family history, past behavior, behavior and appearance in court, and medical and psychiatric reports. Therefore, this court draws no inferences as to competency from the letters.

Ricardo Gonzalez Garcia argues that the letters would lead a reasonable attorney to question Gonzalez Garcia's competency. Nevertheless, we do not know to what extent trial counsel questioned Gonzalez Garcia's ability to assist in the defense of the prosecution. The record lacks any communications between Gonzalez Garcia and his attorney. Neither Gonzalez Garcia nor trial counsel disclose communications between the two.

Ricardo Gonzalez Garcia also complains of the trial court's failure to address Gonzalez Garcia's competency. Nevertheless, the record does not show whether the trial

court judge read or knew about Ricardo Gonzalez Garcia's letters. Therefore, the trial court record fails to support that the trial court should have ordered a competency hearing under RCW 10.77.060(1)(a).

CONCLUSION

We reject Ricardo Gonzalez Garcia's appeal that either the trial court or trial counsel should have questioned his competency to stand trial. Our ruling does not prejudice Gonzalez Garcia from raising the same contention in a personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, C.J.

11