IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON | No. 77463-8-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MATTHEW L. CHRISTENSON, | |
| Appellant. | FILED: August 12, 2019 |

SCHINDLER, J. — Matthew L. Christenson seeks reversal of the jury convictions for domestic violence homicide by abuse, domestic violence second degree felony murder, two counts of domestic violence second degree assault, second degree assault, unlawful imprisonment, and felony harassment. Christenson claims the court erred in denying his motion to substitute appointed counsel and his request to continue trial to allow him to retain private counsel. Christenson also challenges denial of his request to appoint an expert to evaluate his mental competency. Because the court did not abuse its discretion by denying the requests, we affirm.

FACTS

On January 2, 2015, the State charged Matthew L. Christenson with domestic violence assault in the second degree and domestic violence unlawful imprisonment of

14-year-old J.C. between January 1 and May 10, 2014. The court appointed SCRAP[1] public defenders to represent Christenson.[2]

On March 26, 2015, the State filed an amended information to add charges against Christenson of domestic violence homicide by abuse of O.S. on or about April 12, 2014; domestic violence murder in the second degree of O.S. on or about April 12, 2014; domestic violence assault in the second degree of O.S. between January 1 and April 12, 2014; and felony harassment of J.C. between January 1 and May 10, 2014. The State alleged several aggravating factors, including deliberate cruelty, the victims were particularly vulnerable or incapable of resistance, Christenson used his position of trust to commit the crimes, and an ongoing pattern of abuse.

Christenson did "not trust" the SCRAP attorneys. Christenson told them he wanted a new attorney. On July 14, 2015, Christenson filed a pro se motion to discharge the SCRAP attorneys and obtain new appointed counsel. Christenson asserted the attorneys did not properly investigate his case or file motions that they discussed and manipulated him into authorizing multiple trial continuances. At the July 14 hearing, Christenson told the court, "I don't trust [the attorney]. I'm not going to take my time to talk to him about my case that has my freedom at stake." The court denied Christenson's motion. However, on July 23, SCRAP withdrew as appointed counsel because of a conflict under Rule of Professional Conduct (RPC) 1.7.[3]

---

[1] Society of Counsel Representing Accused Persons.

[2] One SCRAP attorney was already representing Christenson on an unrelated charge.

[3] SCRAP represented a witness the State would be calling to testify against Christenson. RPC 1.7(a) states a lawyer "shall not represent a client if the representation involves a concurrent conflict of interest."

2

On July 29, the court appointed attorney Nicholas Marchi to represent Christenson. Marchi spent the next 18 months interviewing dozens of witnesses, diligently pursuing discovery, and preparing Christenson's case for trial.

On January 9, 2017, Christenson filed a pro se "Motion To Retain New Trial Lawyer" asking the court to appoint new counsel. The court found Christenson's factual basis inadequate and declined to consider the motion. Marchi continued interviewing witnesses and preparing Christenson's case for trial.

Approximately a month before the scheduled trial date, on April 24, Christenson filed another pro se motion to discharge Marchi and appoint new counsel. Christenson asserted Marchi had not discussed discovery with him, failed to investigate witnesses and pursue exculpatory electronic evidence, and failed to file motions they discussed. Christenson asserted he could not work with Marchi "at building my defense."

At the April 26 hearing on Christenson's motion, Marchi cited a conflict under the RPC and moved to withdraw. The State opposed the motion. The State noted Marchi had diligently prepared "a complex murder case that has more than 2500 pages of discovery" and completed dozens of witness interviews with only a few interviews remaining before the May 25 trial date. The court agreed to consider the ethical concerns Marchi cited in camera.

At the hearing on May 1, the court found there was a "fundamental disagreement" between Christenson and Marchi regarding "trial strategy and trial tactics and what witnesses should be interviewed." But the court denied Christenson's motion to discharge Marchi for the following reasons:

> This case has had one lawyer discharged already. The case has been around for quite some time. Mr. Marchi has done a significant

3

amount of work in this case. It would require a significant amount of time and a significant amount of work for another lawyer, which wouldn't be necessarily dispositive for me in terms of changing lawyers if I thought it was going to make a difference in the long term to appoint another lawyer.

In this case, given Mr. Christenson's disagreements with [the SCRAP attorneys] — and given the types of issues that Mr. Christenson has with Mr. Marchi — I am not convinced that if I were to appoint another lawyer that it would end up any differently down the road when that lawyer disagrees with the trial tactics and trial strategies that Mr. Christenson might have in this case.

On May 3, Christenson told Marchi that he wanted to proceed pro se. At a hearing on his motion on May 9, Christenson said he wanted to "proceed pro se so I can go over the case the way I feel like I should need to. I understand the case as I've been proceeding with it." The court provided Christenson with a written waiver of counsel to review[4] and reset the hearing to complete the colloquy.

On May 15, the court engaged in a colloquy with Christenson on his request to proceed pro se. The court determined Christenson made the decision to proceed pro se knowingly, intelligently, and voluntarily. Christenson informed the court that he would need a continuance of the May 25 trial date of "at least sixty days to review the case" and prepare. On May 18, the court granted Christenson's motion to proceed pro se. The State requested the court appoint Marchi as standby counsel. Christenson did not object. The court appointed Marchi as standby counsel and continued the trial date to June 12, 2017. Over Christenson's objection, the court ruled Ty Jenkins would continue as the defense investigator.

On May 30, citing strategic disagreements and a lack of trust, Christenson asked the court to remove Jenkins and assign another investigator. Christenson said, "I refuse

---

[4] The waiver of counsel included the maximum penalty for each offense the State charged as well as the rights Christenson would forego without the assistance of counsel.

to work with [Jenkins]" and have "a different strategy to this case." The court denied the request.

On June 6, the State filed a second amended information to add another count of domestic violence assault in the second degree of O.S. between January 1 and April 12, 2014 and the aggravating factors of deliberate cruelty, an ongoing pattern of abuse, O.C. is a vulnerable victim, and Christenson used his position of trust to commit the crime.

At a hearing on June 6, when asked to provide the nature of his defense to the State, Christenson was unable to articulate a defense. Christenson requested another continuance of 60 days to prepare his defense. The court denied Christenson's request, noting Christenson was experiencing "the difficulty in general of preparing for trial" that was "not a basis to continue the trial date."

On the first day of trial on June 15, Marchi moved to withdraw as standby counsel. The State opposed the motion. Marchi argued Christenson does not have a right to standby counsel, Christenson was complying with court rules, and counsel had other cases going to trial. Marchi noted Christenson "seems to have a working knowledge of what he needs to do," his pro se motions "seem to comply with the court rules," and Jenkins was available to "assist with serving subpoenas and preparing to get the subpoenas served, getting witnesses to the courtroom, [and] interviewing witnesses on behalf of the defendant."

Christenson did not object to Marchi withdrawing as standby counsel. The court granted Marchi's motion to withdraw as standby counsel.

Christenson moved to withdraw his motion to proceed pro se. Christenson stated he was "in the middle of working on retaining" private attorney Carlos Gonzalez to review the State's final plea offer. According to Christenson, Gonzalez did not appear in court because he had another matter in Snohomish County. The court ruled:

> If there is an attorney you want to retain, that attorney needs to come — as a threshold matter — into court and say, "I'm here. I'm ready to go. I want to be appointed." Then we can hear what that attorney has to say at that point. To date, that hasn't happened.

Christenson explained that he wanted counsel for trial because "[t]here is no way that I can go forward not knowing what I'm doing" but rejected reappointing Marchi as counsel. The court denied Christenson's motion to appoint any attorney other than Marchi. Afterward, the court began hearing motions in limine.

On June 19, Christenson renewed his request for appointment of counsel, but not Marchi. After describing a detailed history of Christenson's dissatisfaction with prior appointed counsel as well as his election to proceed pro se, the court denied the motion "to appoint another attorney." Later that day, Christenson changed his mind and agreed to accept Marchi as counsel rather than continue pro se.

At the next hearing on June 21, Marchi told the court that his team could "get onboard" if reappointed but that Christenson needed to understand Marchi would decide "legal strategy." The court reappointed Marchi as counsel. The court told Christenson:

> I won't go on at length but I will say this is not a decision about whether Mr. Marchi and Mr. Christenson enjoy each other. It is to provide a competent and adequate legal defense. He is your attorney now. He will make strategic decisions. I think he understands concerns that you have. He has been trying these types of cases for many many years. I am confident you will be in a much better position to provide a vigorous defense with his representation.

On the first day of jury selection on June 26, Marchi told the court that Christenson informed him that he retained Gonzalez as trial counsel but said Gonzalez was away on vacation. Gonzalez had not filed a notice of appearance or otherwise communicated with the court or the attorneys in the case. After considering the 11 factors set forth in State v. Hampton, 184 Wn.2d 656, 361 P.3d 734 (2015), the court denied Christenson's request to appoint Gonzalez as private counsel. The court noted that "we don't have Mr. Gonzalez here seeking to be appointed."

Marchi also told the court that Christenson told him "he may not be competent to proceed going forward" and requested a competency evaluation. Christenson told Marchi he had difficulty "understanding the nature of" the trial proceedings, was "confused," and had a "hard time" accepting "the reality of his current situation." The court asked whether Marchi and the prosecutor had concerns about Christenson's competency.

> THE COURT: Is it accurate for me to assume that if prior to that time, in your professional judgment, you had concerns about his competency, you would have brought that to the attention of the Court?
> MR. MARCHI: Yes, Your Honor.
> THE COURT: Let me hear from the State.
> [PROSECUTOR]: I believe that would be correct, coming from Mr. Marchi as well. I do think this is a delay tactic. I would note that Mr. Marchi never raised the issue of competency, that I'm aware of, while this case was pending. This Court itself has engaged in numerous colloquies with the defendant, as Judge Bowman and Judge Berns have the last few weeks. It's quite clear the defendant understood the nature of the proceedings, asked pertinent questions, recited to case law.
> I would note that in the briefing that the defendant had provided while he was pro se, it was certainly cogent. The arguments, while maybe the State didn't agree in their validity, they certainly made sense and demonstrated that he did understand the nature of the proceedings. I don't think there's any basis for this Court to delay this trial for any competency evaluation.

The court stated that it also "did not have any concerns about Mr. Christenson's competence" based on its observations of him during the proceedings.

Following a short recess, Marchi told the court that Christenson reported "seeing things, hearing voices," and an inability to "focus on his defense" or assist counsel. Christenson cited 18 U.S.C. § 4241, "Determination of Mental Competency To Stand Trial To Undergo Postrelease Proceedings," in support of his request for a competency evaluation. The court denied the request and found Christenson "very competent."

> [B]ased on not only my own multiple interactions with Mr. Christenson in court during the time that he was representing himself pro se, which again involved his oral presentations and arguments to me, it also involved numerous written submissions to me, so I'm familiar with those.
>
> I'm also familiar with hearings that he had before Judges Berns and Bowman on May 9 and May 15 and May 18. . . . I listened to those hearings two to three times each, as well as reading a transcript of those hearings.
>
> Based on all this contact that I've had with Mr. Christenson, I have zero concern about his competence to stand trial. I have considered the factors listed in [In re Pers. Restraint of Fleming, 142 Wn.2d 853, 16 P.3d 610 (2001),] which include, not an exhaustive list, but included the defendant's appearance, demeanor, conduct, personal history to the extent I know it, past behavior to the extent I know it, and the medical and psychiatric reports to the extent I know it. . . .
>
> Taking everything together into account, Mr. Christenson has presented himself to be very competent. I also note . . . I spent a good deal of time interacting with pro se litigants . . . . And again, Mr. Christenson is at the very high end of that spectrum. And I have no doubt, based on what I've seen, that he is competent to stand trial and interact with his attorney, should he choose to do that.

Following voir dire, the court impanelled the jury on June 29. The court recessed the trial until July 17.

Before opening statements on July 17, Marchi moved to withdraw because Christenson filed a bar complaint against him. Christenson filed a "Motion for New Trial Lawyer Due to Ineffective Assistance of Counsel/Conflict of Interest" and requested the

8

court appoint new counsel. After thoroughly inquiring into the nature of the conflict during an hour-long ex parte hearing, the court denied Marchi's motion to withdraw and the motion to appoint a new attorney.

The State called a number of witnesses to testify during the 12-day jury trial. Christenson filed multiple pro se motions and pleadings throughout the trial, including an 11-page "Supplemental Brief to Motion To Sever Counts" filed August 2 and an 8-page "Letter for the Record" filed August 7. The Letter for the Record sets forth the "number of problems I had with Mr. Marchi" and requests "help" with "mental problems."

On the final day of the State's case-in-chief on August 7, Marchi told the court that Christenson received "a psych evaluation from the Jail and that he was having severe mental issues in dealing with this case." Christenson told Marchi that the jail "Psych Unit" was "recommending some sort of treatment." Marchi moved to recess the trial until Christenson "can follow up with mental health treatment at the Jail and get medication." The court denied the request.

> [T]here is no reason to delay our proceedings today. I'm basing that on the sum of my experience with Mr. Christenson and my close observation of him over the last several weeks during trial — he has been following along in court, he's taking notes, he has been consulting with Counsel — and in his continued, cogent, and articulate communications to the Court.

On August 8, defense called a witness to testify. Marchi told the court Christenson "is requesting a recess and/or continuance" to obtain psychological treatment and decide whether to testify. While the court concluded Christenson might benefit from "seeking psychological help," it found Christenson competent. After describing Christenson's competency in detail, including the "ability to consult with his attorney" and "a rational and factual understanding of the proceedings against him," the

court ruled his "competence for trial is [not] in question in the least and a recess would be inappropriate." Christenson did not testify.

The jury convicted Christenson as charged. By special verdict, the jury found Christenson guilty of the aggravating factors of deliberate cruelty, the victims were particularly vulnerable or incapable of resistance, Christenson used his position of trust to commit the crimes, and an ongoing pattern of abuse.

## ANALYSIS

### Requests To Appoint Counsel

Christenson challenges the decision to deny his motions to appoint new counsel, claiming there was a "complete breakdown" in the attorney-client relationship with Marchi.

"Whether an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel is a matter within the discretion of the trial court." State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). A court abuses its discretion when its decision adopts a view that no reasonable person would take or is based on untenable grounds or untenable reasons. State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

The "essential aim" of the Sixth Amendment to the United States Constitution "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). However, "[i]f the relationship between lawyer and client completely collapses," refusal to substitute counsel violates the defendant's constitutional right to effective assistance of counsel. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 722, 16 P.3d 1 (2001).

A defendant "who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Stenson, 132 Wn.2d at 734. A general loss of confidence or trust in defense counsel by itself is not sufficient cause to substitute new counsel. Stenson, 132 Wn.2d at 734. The defendant and attorney must be "so at odds as to prevent presentation of an adequate defense." Stenson, 132 Wn.2d at 734.

> A disagreement over defense theories and trial strategy does not by itself constitute an irreconcilable conflict entitling the defendant to substitute counsel because decisions on those matters are properly entrusted to defense counsel, not the defendant.

State v. Thompson, 169 Wn. App. 436, 459, 290 P.3d 996 (2012).

In determining whether the court abused its discretion in concluding there was not an irreconcilable conflict, we consider (1) the extent of the conflict, (2) the adequacy of the court's inquiry, and (3) the timeliness of the motion. Stenson, 142 Wn.2d at 723-24. Christenson contends the court erred by denying his numerous requests to discharge his attorney and obtain new counsel. Christenson does not challenge the adequacy of the court's inquiry on any of the rulings. We address each request in turn.

First Request

Christenson moved to discharge Marchi on January 9, 2017 but did not provide a factual basis. Because the motion was inadequate, the court did not abuse its discretion by not considering Christenson's request.

Second Request

On April 24, 2017, Christenson requested appointment of new counsel. The record does not indicate a breakdown in communication or irreconcilable conflict

affecting the adequacy of his representation. Christenson disagreed with Marchi concerning trial strategy and tactics. However, defense counsel has wide latitude to control trial strategy and tactics. Stenson, 142 Wn.2d at 733-34. Christenson did not present any evidence to establish he was unable to communicate with Marchi to such a degree "as to prevent presentation of [an] adequate defense." Stenson, 132 Wn.2d at 734.

Additionally, Christenson made his second request a month before the scheduled May 25 trial date. Because Marchi had spent many months preparing for trial, it would have taken a new attorney a significant amount of time and effort in an already long-delayed and complicated trial to review more than 2,500 pages of discovery and interview dozens of State witnesses in order to prepare for trial. Notwithstanding the amount of significant delay that appointment of new counsel would bring, the record suggests Christenson would likely disagree on trial strategy or tactics and seek to discharge new counsel. The court did not abuse its discretion in denying the April 2017 motion.

Third Request

On the first day of trial on June 15, 2017, Christenson withdrew his motion to proceed pro se and requested appointment of new counsel. The court did not abuse its discretion by denying Christenson's request and giving him the option of reappointing Marchi. After a defendant's valid waiver of counsel, "the trial court is not obligated to appoint, or reappoint, counsel on the demand of the defendant." State v. DeWeese, 117 Wn.2d 369, 379, 816 P.2d 1 (1991) ("[A]fter a valid denial of a defendant's request

for appointment of substitute counsel, the trial court may require the defendant to choose between remaining with current counsel or proceeding pro se.").

Fourth Request

The court also did not abuse its discretion by denying Christenson's motion for new counsel prior to opening statements on July 17. The court conducted an extensive inquiry and allowed Christenson and Marchi to state their concerns fully.

In denying the request, the court found (1) Christenson's expectations of timely communications with Marchi did not "adequately recognize the demands of a very busy and good trial attorney, and the competing demands and time of a trial attorney moving several cases forward to trial"; (2) Christenson failed to show any material prejudice concerning Marchi's preparation; (3) Marchi adequately communicated the State's plea offers to Christenson; (4) Christenson's complaints about Marchi were primarily disputes "about strategy and tactics"; (5) Christenson created the bar grievance issue himself; (6) if required, the court and bar association could draft an appropriate protective order that would prevent privileged information from being used in the proceedings; (7) Marchi provided "competent, zealous, timely, patient representation"; (8) Christenson "would have similar disagreements about strategy in trial" if the court "were to appoint yet a third trial attorney"; (9) "substitution at this point would clearly have an adverse impact on the proceeding"; (10) Christenson's case "has been pending for a long time"; and (11) although Christenson and Marchi do not enjoy working with each other, "an adequate defense is being pursued and will be presented to the jury."

While the record reflects disagreement and frustration between Christenson and his counsel, the record does not demonstrate a complete breakdown in communication

or an irreconcilable conflict that affected the adequacy of representation. The court did not abuse its discretion in denying Christenson's motions for new counsel.

Request for Continuance To Retain Private Counsel

Christenson argues the court violated his Sixth Amendment right to counsel of choice.

"As part of the Sixth Amendment right to the assistance of counsel, defendants with private attorneys generally have the right to the counsel of their choice." Hampton, 184 Wn.2d at 662. But this right is not absolute. Hampton, 184 Wn.2d at 663. A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." United States v. Gonzalez-Lopez, 548 U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).[5] We review the trial court's balancing decision for abuse of discretion. Hampton, 184 Wn.2d at 663.

Where, as here, appointing new counsel requires a continuance to prepare for trial, we review the "trial court's denial of a continuance to determine whether it was 'so arbitrary as to violate due process.' " Hampton, 184 Wn.2d at 663 (quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)). In Hampton, the Washington Supreme Court listed 11 nonexclusive factors trial courts may consider when balancing a defendant's right to his choice of counsel, including:

> (1) whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;
> (2) the length of the continuance requested;
> (3) whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;
> (4) whether the court had granted previous continuances at the defendant's request;
> (5) whether the continuance would seriously inconvenience the witnesses;

---

[5] Citation omitted.

(6) whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;

(7) whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;

(8) whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;

(9) whether there was a 'rational basis' for believing that the defendant was seeking to change counsel 'primarily for the purpose of delay';

(10) whether the current counsel was prepared to go to trial; [and]

(11) whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature.

Hampton, 184 Wn.2d at 669-70 (quoting 3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 11.4(c) at 718-20 (3d ed. 2007)).

Because the record establishes Gonzalez never appeared in court; never filed a notice of appearance on Christenson's behalf; and never contacted appointed counsel, the prosecutor, or the court, the court did not abuse its discretion by denying the request for a continuance.

Nonetheless, the court considered all 11 of the Hampton factors in determining whether to grant Christenson's request for a continuance to retain private counsel. The court found the request did not come at a point sufficiently in advance of trial to permit the court to adjust its calendar and a continuance would seriously inconvenience over two dozen witnesses, including some "vulnerable" witnesses. On balance, the court concluded the factors weighed in favor of denying the request. Based on the record, we conclude the court did not abuse its discretion.

Request for Competency Evaluation

Christenson next challenges the court's denial of his request for a mental health competency evaluation.

15

The due process clause of the Fourteenth Amendment to the United States Constitution "prohibits the conviction of a person who is not competent to stand trial." Fleming, 142 Wn.2d at 861. "No incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. RCW 10.77.060(1)(a) states:

> Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary [of the Department of Social and Health Services] to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant.

The determination of whether a competency evaluation should be ordered is reviewed for abuse of discretion. State v. Heddrick, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). The factors courts may consider to determine "whether or not to order a formal inquiry into the competence of an accused include the 'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.' " Fleming, 142 Wn.2d at 863 (quoting State v. Dodd, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

"A defendant is competent if he has the capacity to understand the nature of the proceedings against him and to assist in his own defense." State v. Lord, 117 Wn.2d 829, 900, 822 P.2d 177 (1991), abrogated on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018). "The competency standard for pleading guilty or waiving right to counsel is the same as the competency standard for standing trial." Fleming, 142 Wn.2d at 862.

16

Here, the court based its decision on interactions with Christenson over the course of more than two months of trial proceedings. The court found Christenson had the "present ability to consult with his attorney with a reasonable degree of rational understanding and a rational and factual understanding of the proceedings against him." The court notes Christenson "has been well groomed," his appearance "orderly," his "demeanor and conduct have been calm and respectful," "his thinking and arguments have been cogent," and "[h]e's been able to track and understand . . . a line of thinking or argument." The record also shows the court granted Christenson's motion to waive counsel and proceed pro se for more than a month. Christenson prepared numerous pro se motions that contained reasoned arguments and case citations. The record supports the conclusion that the court did not abuse its discretion in denying the request for a competency evaluation.

We affirm the convictions.

_____

WE CONCUR:

_____                    _____