
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36089-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GAVIN DAVID WOLF, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — After being permitted to participate in Spokane County mental health court for two years in lieu of criminal prosecution, Gavin Wolf was terminated from the court program and convicted of three counts of third degree assault. Incorporating much from an opinion filed today in another appeal by Mr. Wolf, we reject his contention that he was denied due process and find no abuse of discretion by the mental health court judge in ordering that Mr. Wolf wear waist restraints during the termination hearing. We affirm the convictions but grant Mr. Wolf's request for *Ramirez*[1] relief from some of the terms of his judgment and sentence.

---

[1] *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

FACTS AND PROCEDURAL BACKGROUND

Just before midnight on an evening in August 2015, officers responded to a report of a disorderly male at a movie theater in downtown Spokane. On their arrival, theater personnel identified Gavin Wolf as the individual who had threatened staff and who they wanted trespassed. Officers escorted him out of the theater. Once outside, Mr. Wolf told the officers he needed medical treatment for a toe injury he suffered on a theater escalator. When medical help responded, the officers left.

About two hours later, the officers were on a scheduled break and stopped at Deaconess Hospital to eat. Upon entering the hospital, they saw that hospital security guards were having trouble with Mr. Wolf. The guards told the police officers that Mr. Wolf had caused problems and they wanted him trespassed from the hospital. In response to the officers telling him he was trespassed, Mr. Wolf was belligerent and yelled obscenities, but he eventually left—only to return, pound on the hospital's glass doors, and flip off the officers as they watched from inside. The officers decided to place Mr. Wolf under arrest. When they stepped outside and attempted to place Mr. Wolf in handcuffs, he strenuously resisted. In the course of being forcibly restrained, Mr. Wolf suffered a bloody nose. As his nose bled heavily, Mr. Wolf both spat blood and purposefully blew blood from his nose at the police and security officers.

2

In his dealings with police officers on the evening of his arrest, Mr. Wolf informed two officers that he was infected with MRSA[2] and was hepatitis C positive. The two police officers and one security officer who were struck by Mr. Wolf's blood spray were required to go through exposure protocols.

Mr. Wolf was charged with three counts of third degree assault. Prior to these charges, Mr. Wolf had successfully applied for drug court in lieu of prosecution to resolve burglary and burglary-related charges in *State v. Wolf*, Spokane County Superior Court cause no. 14-1-01937-9. (We refer to that case, both in the trial court and on appeal (Court of Appeals No. 36088-1-III (Wash. Ct. App., Feb. 11, 2020 (unpublished)) as *Wolf* I). In March 2016, he was permitted to transfer to mental health court with the opportunity to resolve the charges in that case, and he opted into mental health court to resolve the three third degree assault charges in this case as well. He signed a mental health court waiver and agreement that required him to participate in treatment, to refrain from using or possessing drugs or alcohol, and to commit no new criminal law violations. The agreement notified him of acts or omissions on his part that would subject him to termination from the mental health court program, one being "[r]e-arrest during the treatment program." Clerk's Papers (CP) at 8. He agreed that if he was terminated from the mental health court program, he would proceed to a bench trial on the charges against

---

[2] Methicillin-resistant Staphylococcus aureus.

him, and the court's decision would be based solely on the information in the police reports.

As recounted in greater detail in this panel's opinion filed today in *Wolf* I, Mr. Wolf was arrested for a new charge of second degree malicious mischief in January 2018. As a result of the new arrest, the State sought to terminate his participation in the mental health court program. A termination hearing was held on March 13, 2018, at which the mental health court judge granted a State motion that Mr. Wolf remain in waist restraints during the hearing. At the conclusion of the hour-and-a-half long hearing, the mental health court judge terminated Mr. Wolf's participation in mental health court.

Mr. Wolf agreed to have the mental health court judge preside at his stipulated facts trial in this matter, which took place the following month. He was found guilty as charged and was sentenced to a prison-based drug offender sentencing alternative. In entering judgment, the trial court imposed three then-mandatory legal financial obligations (LFOs) and ordered Mr. Wolf to pay supervision costs. He appeals.

ANALYSIS

I.  MR. WOLF FAILS TO DEMONSTRATE A VIOLATION OF HIS RIGHT TO DUE PROCESS

Mr. Wolf's first assignment of error is to alleged denials of due process at his termination hearing.

Both the federal and state constitutions guarantee a criminal defendant the right to due process of the law. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. For parole

4

revocation decisions, the United States Supreme Court long ago identified some minimal due process guarantees: written notice, disclosure to the parolee of evidence against him, opportunity to be heard, right to confront adverse witnesses, a neutral decisionmaker, and a written statement of evidence considered. *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Washington decisions have held the guarantees to apply in analogous contexts, including termination from a therapeutic court program. *See Wolf* I, slip op. at 7 (citing cases).

Mr. Wolf contends he was not provided with written notice of claimed violations, the prosecution did not disclose the evidence it was relying on in seeking termination, he was not permitted to call witnesses or present evidence, he was not given the right to confront or cross-examine witnesses, he did not receive a decision from a neutral decisionmaker, the court did not require the prosecution to prove by a preponderance of the evidence that Mr. Wolf had violated his agreement, and it did not enter adequate written findings and conclusions.

As explained in *Wolf* I, RAP 2.5(a) states the general rule that we will not review an error that is raised for the first time on appeal, and Mr. Wolf failed to preserve all but one of the due process arguments advanced in his opening brief. *Wolf* I, slip op. at 7-18. He argues that the deprivations he asserts qualify as manifest constitutional error reviewable under RAP 2.5(a)(3), but we disagree. If there was error, it was not manifest.

No. 36089-0-III
*State v. Wolf*

We incorporate the analysis set forth in *Wolf* I. *See Wolf* I, slip op. at 7-18. The due process errors asserted on appeal are not manifest or fail for other reasons. No violation of Mr. Wolf's due process right is shown.

II.    THE TRIAL COURT CONDUCTED AN ADEQUATE HEARING BEFORE GRANTING THE STATE'S MOTION THAT MR. WOLF REMAIN IN WAIST RESTRAINTS

Mr. Wolf's next assignment of error is to the court's order that he remain in waist restraints during the termination hearing.

A trial court has a duty to provide for courtroom security, and measures needed to protect the safety of court officers, parties, and the public, are within the court's discretion. *State v. Hartzog*, 96 Wn.2d 383, 396, 635 P.2d 694 (1981). In exercising discretion, the trial court must bear in mind a defendant's right "to be brought before the court with the appearance, dignity, and self-respect of a free and innocent" individual. *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999). This includes a defendant's right "to be brought into the presence of the court free from restraints." *State v. Damon*, 144 Wn.2d 686, 690, 25 P.3d 418 (2001). Restraints should be allowed "only after conducting a hearing and entering findings into the record that are sufficient to justify their use on a particular defendant." *State v. Walker*, 185 Wn. App. 790, 800, 344 P.3d 227 (2015). We review a trial court's decision to keep a defendant restrained for abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001).

6

As explained in *Wolf* I, we find no abuse of discretion by the trial court in ordering that Mr. Wolf remain in waist restraints during the hour-and-a-half long hearing. As further explained in that opinion, we hold that even if the court's discretion was abused, the error was harmless beyond a reasonable doubt.

III.    *RAMIREZ* RELIEF

Finally, Mr. Wolf asks this court to remand this case to the trial court to strike the criminal filing and DNA[3] collection fees imposed by his judgment and sentence as well as the provisions requiring Mr. Wolf to pay the costs of community custody and accruing interest. He relies on *Ramirez*, which held that relief from LFOs that became effective in June 2018 apply to cases then pending on direct appeal. 191 Wn.2d at 735.

For reasons explained in *Wolf* I, we will direct the trial court to strike the challenged LFOs from Mr. Wolf's judgment and sentence, a ministerial correction that will not require Mr. Wolf's presence. *See Wolf* I, slip op. at 21-22.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Wolf raises the same four issues raised in the SAG he filed in *Wolf* I. We reject the first three grounds,[4] incorporating our analysis in *Wolf* I. *See Wolf* I, slip op. at 22-24.

---

[3] Deoxyribonucleic acid.
[4] The first three grounds raised by Mr. Wolf's SAG deal with his allegedly improper admission to the mental health court program; his contention that at the termination hearing, the burden of proof was improperly shifted to him; and an

7

Mr. Wolf's fourth ground for relief alleges that he was improperly denied a contested competency hearing. We address that issue here, since the relevant record was filed only in this matter.

At the outset of Mr. Wolf's stipulated facts trials for the assault charges in this case and the burglary and burglary-related charges in *Wolf* I, Mr. Wolf sought to represent himself, telling the court that his court-appointed defender was unwilling to advance an argument that Mr. Wolf was mentally incompetent to stand trial. The trial court satisfied itself that Mr. Wolf's request for self-representation was unequivocal, explained to Mr. Wolf the incongruity between asking to proceed pro se and claiming to be incompetent, and engaged in a *Faretta*[5] colloquy, before granting Mr. Wolf's request to proceed pro se. In the process—and as part of concluding that Mr. Wolf could represent himself—the trial court found Mr. Wolf competent, pointing to Mr. Wolf's presumed competency, a contemporaneous finding in a separate criminal case that Mr. Wolf was competent to stand trial,[6] the trial court's several years' experience with Mr. Wolf in therapeutic courts, and Mr. Wolf's discussions with the court, his tracking of the issues, and his legal research. A criminal defendant's motion to proceed pro se may be

---

appearance of fairness challenge.

[5] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[6] A competency evaluation was ordered and a finding of competency was made in the prosecution of the 2018 charge of second degree malicious mischief that triggered the State's request that Mr. Wolf's participation in mental health court be terminated.

granted only if (among other things) the defendant is competent to stand trial. *State v. Coley*, 180 Wn.2d 543, 560, 326 P.3d 702 (2014). When Mr. Wolf sought to call witnesses to contest his competency, the trial court would not allow it, pointing out that it was deciding a self-representation issue; it was not engaged in a competency proceeding.

Citing *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975), Mr. Wolf now argues that when there is conflicting evidence of competency to stand trial and competency is contested, a full and fair hearing must be held. What *Drope* actually held is that where evidence suggested that a Missouri criminal defendant was not competent, an examination under the state's statutory proceeding for competency determinations should have been ordered. *Id.* at 177-78, 181.

In Washington State, chapter 10.77 RCW prescribes the procedures and standards trial courts use to investigate and judge the competency of defendants to stand trial. *Coley*, 180 Wn.2d at 551. When there is reason to doubt the competency of the defendant, the court on its own motion or on the motion of any party must order that a qualified expert or professional evaluate and report on the defendant's mental condition. RCW 10.77.060(1). No one ever requested that Mr. Wolf's competency be evaluated in this matter.

This is not to say that if the process provided by chapter 10.77 RCW is never initiated, a defendant who is or was truly incompetent to stand trial has no redress. Case law holds that if a defendant claiming incompetency supports a motion with substantial

9

evidence of incompetency, the trial court must either grant the motion or hold a formal competency hearing. *State v. DeClue*, 157 Wn. App. 787, 792, 239 P.3d 377 (2010). "In contrast, when an incompetency claim is not supported by substantial evidence, the defendant has not demonstrated a manifest injustice and the trial court may deny the motion without holding a formal competency hearing." *Id.* at 793. Mr. Wolf did not present the court with substantial evidence of incompetency.[7]

Additionally, if evidence *following* conviction indicates that a defendant was incompetent at trial, there could be a violation of due process; in such a case, we would remand for a fact finding hearing. *State v. Wright*, 19 Wn. App. 381, 387, 575 P.2d 740 (1978). Before we would order that relief, however, a defendant must present evidence that he was incompetent at the time of trial. There is no such evidence in our record. *See id.*, at n.7. If Mr. Wolf has evidence outside the record that would indicate he was

---

[7] In proceedings below, Mr. Wolf pointed to record evidence that he had been found eligible for mental health court, transport officers had referred to his mental health issues in asking that he be restrained during the termination hearing, and his case manager addressed his mental health struggles at the termination hearing. The trial court responded:

> Having a mental health illness does not mean you're not competent. Those are two separate things. . . . It simply means you are dealing with a mental illness. That is a different issue.

Report of Proceedings (Jan. 30, 2018) at 87. We agree. To demonstrate that he was incompetent to stand trial, Mr. Wolf was required to demonstrate that he lacked the capacity to understand the nature of the proceedings against him and was unable to assist in his own defense. *See* RCW 10.77.010(15) (defining "Incompetency").

10

incompetent at the time of his stipulated facts trial, his remedy is to file a personal restraint petition supported by that evidence. *See State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

We affirm Mr. Wolf's convictions. We remand to the trial court with instructions to strike the criminal filing and DNA collection fees imposed by his judgment and sentence as well as the provisions requiring him to pay the costs of community custody and accruing interest.[8]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.                     Fearing, J.

---

[8] Mr. Wolf's opening brief includes an assignment of error to cumulative error that we need not address, having found no error.

11